**Opinion issued June 2, 2015**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-14-00547-CR**

———————————

**ROLAND A. ALVARADO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Court at Law No. 12**
**Bexar County, Texas**
**Trial Court Case No. 354155**

---

**O P I N I O N**

A jury convicted appellant, Roland Alvarado, of the Class B misdemeanor offense of driving while intoxicated ("DWI").[1]  The trial court assessed

---

[1]  *See* TEX. PENAL CODE ANN. § 49.04(a) (Vernon Supp. 2014).

punishment at a $750 fine and 180 days' confinement in the Bexar County Jail.[2]

The trial court suspended the confinement portion of the sentence and placed appellant on community supervision for one year. In one issue, appellant contends that the trial court erroneously denied his motion to suppress evidence because his detention was unreasonably long and violated the Fourth Amendment.

We affirm.

## Background

In the early morning hours of February 11, 2011, Garrett Griffin, the manager of Players, a members-only nightclub in San Antonio, asked appellant to leave the club after he became involved in an incident with another member. Griffin escorted appellant out of the club and to his vehicle. As appellant backed out of a parking space, he struck a parked vehicle. Griffin witnessed this accident. Griffin then approached appellant and told him that he had just backed into another vehicle, but appellant denied that he had done so. Griffin called 9-1-1 and ensured that appellant remained at the club until the police arrived.

San Antonio Police Department ("SAPD") Officer J. Chandler testified that he received a dispatch at 12:54 a.m. concerning an accident that had occurred in

---

[2] The Texas Supreme Court transferred this appeal from the Court of Appeals for the Fourth District of Texas to this Court pursuant to its docket-equalization powers. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2013) ("The supreme court may order cases transferred from one court of appeals to another at any time that, in the opinion of the supreme court, there is good cause for the transfer.").

the parking lot at Players. Officer Chandler arrived at the scene at 12:57 a.m. and contacted the owners of the car appellant had hit and discussed the incident with them. Officer Chandler estimated that he spoke with the owners and other witnesses, including Griffin, for approximately five to ten minutes. The vehicle's owners pointed out appellant, who had been walking in the parking lot between his truck and Officer Chandler's patrol car, and Chandler began taking information from appellant. Officer Chandler testified that conducting an accident investigation usually takes him between twenty and thirty minutes.

Officer Chandler testified that appellant had a "strong odor of alcohol on his breath," had bloodshot eyes, was swaying, and appeared as though he had been drinking, and that the other witnesses had informed him that appellant had been drinking while inside the club. Appellant had the hood of his sweatshirt up over his head at the time Officer Chandler first made contact with him, but, during the course of their conversation, appellant pushed his hood down and Chandler recognized appellant as a fellow police officer who worked at the same substation as Chandler.

Once Officer Chandler determined that appellant was a police officer, he returned to his patrol car and contacted his direct supervisor, Sergeant M. Wilson, as required by an SAPD policy that requires officers to notify their direct supervisors any time they investigate an incident involving an off-duty officer.

3

According to Officer Chandler, the policy required that "should an officer be involved in any incident involving anywhere from a disturbance all up to an offense, we have to contact our immediate supervisor to make the location." It took Sergeant Wilson, who appeared on the scene with Lieutenant P. Biasiolli, approximately fifteen to twenty minutes to arrive at the scene after Officer Chandler contacted him. During that time, Officer Chandler allowed appellant to sit in his truck and keep his cell phone in his possession, and Chandler sat in his patrol car and completed the paperwork relevant to the initial accident investigation.

When Sergeant Wilson and Lieutenant Biasiolli arrived, Officer Chandler informed them of what had happened and who was involved in the incident, appellant spoke with all three officers about the accident, and Chandler then began conducting field sobriety tests on appellant. Officer Chandler testified that he began the sobriety tests "close to 2 a.m. in the morning, a little bit before [2 a.m.] possibly."[3] He estimated that he finished the tests approximately fifteen or twenty minutes later, and he then placed appellant under arrest. After being arrested, appellant asked Officer Chandler if he could speak with Lieutenant Biasiolli, which Chandler allowed. The officers then spoke with appellant about whether he could contact someone to pick up his truck from the scene so that the officers

---

[3] At trial, Officer Chandler estimated that he began the field sobriety tests around 1:50 and ended the tests around 2:00 a.m.

4

would not have to tow it. Officer Chandler left the scene with appellant in his patrol car around 2:30 a.m.

Appellant filed a motion to suppress, arguing that his detention was unreasonably long and violated the Fourth Amendment. At the close of the suppression hearing, the trial court stated on the record:

> I'm going to go ahead and deny the defendant's motion to suppress. The Court will find that it was a long period of time, an hour and a half, but given the specific facts in this particular case involving the fact that it was initially an accident investigation which turned into a DWI officer-involved investigation which necessitated contacting supervisors, the Court finds that the circumstances warrant or justify the extended length of the detention. And so at this time, I will deny the defendant's motion to suppress.

The trial court did not make written findings of fact and conclusions of law.

At trial, Officer Chandler testified to essentially the same facts as he had at the suppression hearing. Sergeant Wilson and Lieutenant Biasiolli, who had not testified at the suppression hearing, both testified at trial concerning their involvement in the investigation. Both officers testified that SAPD policy requires a patrol officer to notify his immediate superior, generally a sergeant, when they encounter an off-duty officer involved in an incident. The policy also requires the sergeant to then go to the scene and supervise the patrol officer's investigation to ensure that all relevant protocols are followed and to make the proper notifications regarding the officer-involved offense "through the chain of command." Sergeant Wilson testified that it took him approximately fifteen or twenty minutes to arrive

5

at the scene after he received Officer Chandler's call. He stated that, upon his arrival, Officer Chandler explained the circumstances of the incident. Both Sergeant Wilson and Lieutenant Biasiolli denied giving any instructions to Officer Chandler as to how to proceed with his investigation, and they denied ordering Chandler to place appellant under arrest. Sergeant Wilson testified that he did not conduct the field sobriety tests himself because he "was confident in [Officer Chandler's] abilities to administer the tests, and it's standard procedure for officers to administer the tests to other officers."

After Sergeant Wilson and Lieutenant Biasiolli testified, appellant re-urged his motion to suppress, arguing that Wilson and Biasiolli played no role in the investigation, and, therefore, Officer Chandler's delay in the DWI investigation to allow the supervising officers to arrive at the scene served no legitimate law enforcement purpose. The trial court again noted that the delay was "a long period of time" but then stated, "I think that there is some reasonable—some reasonable, justifiable reason for the delay in this case and that is because this is an extraordinary circumstance. It is an officer-involved case. There are protocols that have to be followed. And so I'm going to go ahead and overrule the motion."

The jury found appellant guilty of DWI. The trial court assessed his punishment at a $750 fine and 180 days' confinement in the Bexar County Jail.

The trial court suspended the confinement and placed appellant on community supervision for one year. This appeal followed.

## Motion to Suppress

In his sole issue, appellant contends that the trial court erred in denying his motion to suppress evidence because the detention was unreasonably long and therefore violated the Fourth Amendment.

### A. Standard of Review

We review a denial of a motion to suppress evidence for an abuse of discretion. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008) (citing *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). When we review a trial court's denial of a motion to suppress, we give "almost total deference to a trial court's express or implied determination of historical facts [while] review[ing] de novo the court's application of the law of search and seizure to those facts." *Id.* We view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (quoting *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006)). The trial court is the "sole trier of fact and judge of the credibility of witnesses and the weight to be given to their testimony." *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). The trial court may choose to believe or disbelieve any part or all of a witness's testimony. *Green v. State*, 934 S.W.2d 92, 98 (Tex. Crim. App. 1996). We sustain

7

the trial court's ruling only if it is reasonably supported by the record and correct on any theory of law applicable to the case. *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003).

## B. Whether Length of Detention Was Reasonable

The Fourth Amendment protects against unreasonable searches and seizures. U.S. CONST. amend. IV; *Belcher v. State*, 244 S.W.3d 531, 538 (Tex. App.—Fort Worth 2007, no pet.). Absent a warrant or some functional equivalent that gives probable cause to arrest, "only a limited, investigatory detention of an individual is permitted." *Belcher*, 244 S.W.3d at 538 (citing *Burkes v. State*, 830 S.W.2d 922, 925 (Tex. Crim. App. 1991)). An investigative detention during the course of a traffic stop in which the subject is not free to leave is a seizure under the Fourth Amendment, and we must analyze the detention under the reasonableness standard. *Id.* "Reasonableness" under the Fourth Amendment "is measured 'in objective terms by examining the totality of the circumstances'" and is a fact-specific inquiry. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004) (quoting *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S. Ct. 417, 421 (1996)). Reasonableness requires "a balance between the public interest served and the individual's right to be free from arbitrary detentions and intrusions." *Id.*

The determination of whether an investigative detention is reasonable is a two-pronged inquiry, focusing first on whether the officer's action was justified at

its inception and then on whether the action was "reasonably related, in scope, to the circumstances that justified the stop in the first place." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S. Ct. 1868, 1879 (1968)). This determination is a factual one and is made by considering the totality of the circumstances existing throughout the detention. *Belcher*, 244 S.W.3d at 538–39.

"In deciding whether the scope of a *Terry* detention is 'reasonable,' the general rule is that an investigative stop can last no longer than necessary to effect the purpose of the stop." *Kothe*, 152 S.W.3d at 63; *see also Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325–26 (1983) ("[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time."). Although the length of a detention may render that detention unreasonable, there is "no rigid, bright-line time limitation." *Belcher*, 244 S.W.3d at 539; *see also United States v. Sharpe*, 470 U.S. 675, 685, 105 S. Ct. 1568, 1575 (1985) ("[I]n evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria."); *United States v. Place*, 462 U.S. 696, 709, 103 S. Ct. 2637, 2645 (1983) ("[T]he brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally

9

intrusive as to be justifiable on reasonable suspicion."). The Supreme Court has held that it is "appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Sharpe*, 470 U.S. at 686, 105 S. Ct. at 1575; *Kothe*, 152 S.W.3d at 64 (stating same).

Courts may consider legitimate law enforcement purposes served by any delay in the officer's investigation. *Belcher*, 244 S.W.3d at 539. Texas appellate courts have concluded that "legitimate law enforcement purposes" in cases involving a DWI investigation include

> a delay to permit the arrival of a DWI enforcement officer so that the supervisory officer initiating the stop can return to duty, a delay for the arrival of a video camera so that the DWI investigation and the field sobriety tests can be taped in accordance with department procedures, and a delay for the arrival of a rookie officer who needs training.

*Id.* at 541 (citing *Hartman v. State*, 144 S.W.3d 568, 573 (Tex. App.—Austin 2004, no pet.), *Smith v. State*, No. 03-06-00085-CR, 2007 WL 700834, at *4 (Tex. App.—Austin Mar. 7, 2007, pet. ref'd) (mem. op., not designated for publication), and *Dickson v. State*, No. 03-06-00126-CR, 2006 WL 3523789, at *4 (Tex. App.—Austin Dec. 6, 2006, no pet.) (mem. op., not designated for publication)); *see also Hartman*, 144 S.W.3d at 572 ("Reasonable purposes include investigation, maintenance of the status quo, and officer safety, considering the totality of the circumstances."). "[T]he key inquiry is not whether a less intrusive alternative was

available to law enforcement officials, but whether the police acted unreasonably in failing to choose that alternative." *Hartman*, 144 S.W.3d at 574.

Here, appellant does not contend that Officer Chandler's detention of him was unlawful at the outset, so we therefore consider only whether the detention was unreasonably prolonged. Officer Chandler received a dispatch concerning an accident that had occurred at the Players nightclub, and he arrived at the club at 12:57 a.m. Officer Chandler estimated that he spent between five and ten minutes obtaining information about the incident from the owners of the vehicle that appellant hit and other witnesses, including Garrett Griffin, the nightclub manager. He then met with appellant about the incident and noticed a "strong odor" of alcohol on appellant's breath, observed that appellant had bloodshot eyes and was swaying, and concluded that appellant appeared as though he had been drinking. Appellant was wearing a hooded sweatshirt at the time, but, during the course of his conversation with Officer Chandler, appellant pushed back the hood of the sweatshirt, and Chandler recognized appellant as a fellow police officer who worked out of the same police substation.

Officer Chandler, Sergeant Wilson, and Lieutenant Biasiolli all testified that SAPD policy requires that the investigating officer notify his immediate supervisor when an off-duty officer is involved in an incident. The supervisor, usually a sergeant, must "make the location," or supervise the original officer's

11

investigation. After Officer Chandler determined that appellant was a fellow SAPD officer, he returned to his patrol car and contacted Sergeant Wilson. While waiting for Sergeant Wilson to arrive at the scene, Officer Chandler completed paperwork concerning the accident in his patrol car, and he allowed appellant to sit in his own vehicle and use his cell phone. Sergeant Wilson arrived at the scene with Lieutenant Biasiolli approximately fifteen or twenty minutes after he received the call from Officer Chandler. Officer Chandler briefly spoke with his commanding officers about the situation concerning appellant and then began performing the standardized field sobriety tests on appellant. Officer Chandler estimated that he began performing these tests shortly before 2:00 a.m.[4] Appellant displayed several clues of intoxication on each of the tests, and, as a result, Officer Chandler placed appellant under arrest. Officer Chandler permitted appellant to speak with Lieutenant Biasiolli in a bid for leniency, and the officers and appellant also arranged for appellant's mother to pick his truck up from the club's parking

---

[4] On appeal, appellant asserts that Officer Chandler did not begin conducting the field sobriety tests until 2:10 a.m. He bases his argument on defense counsel's assertions regarding timing during cross-examination of Officer Chandler at the suppression hearing. Counsel began with the time Officer Chandler left the scene with appellant—2:30 a.m., which is undisputed—and worked backwards using Chandler's estimations of how long it took to arrange transport of appellant's vehicle, for appellant to speak with Lieutenant Biasiolli, and to administer the sobriety tests. Chandler, however, testified at both the suppression hearing and at trial that he began the sobriety tests around 1:50 a.m. or by 2:00 a.m. at the latest.

12

lot to avoid towing of the truck. Officer Chandler and appellant left the scene at approximately 2:30 a.m.

Appellant argues that, contrary to cases such as *Belcher*, in which the Fort Worth Court of Appeals held that a delay to wait for a more experienced officer to perform the DWI sobriety tests was for a legitimate law enforcement purpose that did not unreasonably prolong the investigative detention, in this case the SAPD policy "had no bearing [on] the timing of the investigation," "there is no evidence that these procedures would cause a delay in the investigation," and the additional officers were not "necessary to conduct the [DWI] investigation." Officer Chandler, Sergeant Wilson, and Lieutenant Biasiolli all testified, however, that the SAPD policy not only required the officer investigating the involvement of an off-duty officer in an incident to call his immediate supervisor and notify him of the incident, but also required the supervisor to visit the scene. Lieutenant Biasiolli testified that a senior officer's presence is required at the scene of an officer-involved incident to "make sure that all protocol and everything is—is followed as well as so we can make notification through the chain of command all the way up to and including the chief [of police]." Thus, although the policy did not require Sergeant Wilson, as Officer Chandler's immediate supervisor, to conduct any portion of the DWI investigation himself, the policy did require Wilson to be present on the scene while Chandler conducted the field sobriety tests of appellant,

an off-duty SAPD officer. *See Hartman*, 144 S.W.3d at 573–74 ("Although it is possible that Officer Smith could have conducted unrecorded field sobriety tests on his own, the key inquiry is not whether a less intrusive alternative was available to law enforcement officials, but whether the police acted unreasonably in failing to choose that alternative."); *see also Belcher*, 244 S.W.3d at 541 ("[T]he record viewed in the light most favorable to the trial court's ruling reflects that a DWI investigation was underway when Officer Willenbrock requested Officer Martin's assistance at the scene and that a legitimate law enforcement purpose was served by the delay in the DWI investigation that occurred while awaiting the arrival of Officer Martin.").

The delay in Officer Chandler's DWI investigation of appellant occurred pursuant to an SAPD policy requiring the presence of a supervising officer at the scene of an incident involving an off-duty police officer. Officer Chandler followed SAPD policy when he contacted Sergeant Wilson, informed him of the incident, and awaited Wilson's arrival at the scene before proceeding with the investigation. *See Hartman*, 144 S.W.3d at 574 (noting, in upholding reasonableness of detention despite delay, that "Officer Smith followed police department procedure and was not dilatory in his investigation"). We conclude that the delay in the investigation while Officer Chandler was waiting for Sergeant Wilson to arrive at the scene furthered a legitimate law enforcement purpose. *See*

*Bullock v. State*, 426 S.W.3d 226, 231 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (holding that delay caused by waiting for DWI task force officer "furthered legitimate law enforcement purposes—specifically, ensuring that an adequate number of patrol cars are available to respond to emergency calls and utilizing a DWI unit that has greater experience in investigating DWIs and can perform such investigations with greater expediency"); *Belcher*, 244 S.W.3d at 541 (holding that waiting for arrival of officer with greater experience in DWI investigations furthered legitimate law enforcement purpose).

We further conclude that the length of the delay, given the totality of the circumstances, did not render appellant's detention unreasonable. As we have discussed, Officer Chandler testified concerning the actions taken from the time he arrived on the scene of the accident to the time he left the scene with appellant under arrest in the back of his patrol car. There are no unexplained periods of inactivity, and Officer Chandler arrested appellant as soon as he completed the field sobriety tests, during which appellant displayed several clues of intoxication. *See Josey v. State*, 981 S.W.2d 831, 841 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) ("The officers did not continue to hold appellant after all legitimate components of the investigative detention had been completed. Instead, they arrested him when they had probable cause to arrest him. From this record, we find appellant's detention to be reasonable under the circumstances.").

15

Furthermore, while appellant and Officer Chandler waited for Sergeant Wilson to arrive, Chandler completed paperwork relevant to the earlier accident in his patrol car while he allowed appellant to wait in his own vehicle, un-handcuffed, and to retain possession of his cell phone. *See Belcher*, 244 S.W.3d at 542 ("Additionally, Officer Willenbrock permitted Belcher to smoke and to answer his cell phone during the detention, thus reducing to some extent the level of intrusion generated by the detention.").

Viewing the evidence in the light most favorable to the trial court's ruling, as we must, we conclude that the trial court reasonably determined, based on the totality of the circumstances, that appellant's detention was not unreasonably prolonged. We hold that the trial court did not err in denying appellant's motion to suppress.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Massengale.

Publish. TEX. R. APP. P. 47.2(b).

16