**Opinion issued May 4, 2017**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00935-CR

————————————

**DARCIE LOUISE SPILLERS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Case No. 13CR3471**

---

## MEMORANDUM OPINION

Darcie Louise Spillers was charged with intoxication manslaughter with a vehicle after the passenger in the vehicle she was driving died. A jury found Spillers guilty and sentenced her to 20 years' confinement. On appeal, Spillers complains that (1) the evidence was insufficient to support her conviction; (2) the trial court

erroneously denied her motion to suppress the results of a warrantless blood draw; and (3) the trial court erred by failing to submit an article 38.23 instruction.

We affirm.

## Background

In August 2013, Spillers was involved in a one-car accident around 10:00 p.m. When emergency vehicles arrived at the scene, they found the car in a ditch and Brion Vaughn lodged under the car, but Spillers was not there. Deputy J. Manuel had been dispatched to a nearby home, where he encountered Spillers and learned she had been involved in the car accident. Deputy Manuel took Spillers back to the accident scene, where she waited in the back seat of his patrol car. After some preliminary investigation, Deputy Manuel asked Spillers if she would consent to a blood draw. She orally agreed, and he drove her to the hospital, where she consented to the blood draw in writing, had blood drawn, and then was arrested for public intoxication. Vaughn died five days later, and Spillers was charged with intoxication manslaughter with a vehicle.

Before trial, Spillers moved to suppress the results of the blood draw, which showed 0.23 grams of alcohol per 100 milliliters of blood, on the basis that Spillers did not freely and voluntarily consent. At the hearing on that motion, Deputy Manuel testified that he first encountered Spillers at the home of the couple who reported the accident. He smelled alcohol on Spillers and noticed that she was

impaired and bloody, with a cut on her forehead. According to Deputy Manuel, Spillers explained that she had been in an accident nearby, but denied having been the driver. In fact, she claimed that three other people had been the driver.

Deputy Manuel testified that he drove Spillers to the accident scene where firefighters were pulling Vaughn out from under the car. Spillers sat in the backseat of Manuel's car while he spoke to the other officers and a special prosecutor who had arrived on the scene. Deputy Manuel testified that, while she waited in the patrol car, Spillers asked to use the restroom, but he told her that she could not because there was no female officer to escort her.

Deputy Manuel testified he investigated to determine Spillers's role in the incident and eventually asked Spillers, who was not handcuffed, if she would consent to a blood draw. Spillers orally consented, and the State presented a patrol car video recording of this conversation. Deputy Manuel testified that he did not coerce, threaten, or try to convince Spillers to give her consent. Rather he confirmed with Spillers that her agreement to have her blood drawn was consensual "at least three times." Deputy Manuel testified that Spillers was not under arrest or in handcuffs at the time she consented to the blood draw. He also testified that Spillers was "detained for an investigation" rather than "in custody" and was therefore not Mirandized.

Deputy Manuel then drove Spillers to Mainland Medical Hospital. On the way there, Deputy Manuel reminded Spillers where they were going and re-confirmed her consent to the blood draw. At the hospital, Spillers signed a consent form acknowledging that she "voluntarily consent[s] to have sample(s) taken." Deputy Manuel testified that he arrested Spillers for public intoxication after the blood draw. The trial court denied Spillers's motion to suppress.

At trial, the State presented testimony from numerous witnesses including the neighbors who called the police—Michaela Blair and Justin Foxley. Blair and Foxley testified that Spillers asked them not to call the police and admitted to them that she had been driving, repeatedly stating that she had wrecked her truck. Blair testified that Spillers smelled "very much" of alcohol, as if it had been "poured on her."

Deputy Manuel reiterated his testimony regarding the night of the accident. He again testified that Spillers consented to the blood draw at least three times. He also testified as an accident reconstruction specialist that, based on the circumstances of the accident, he concluded that Spillers did not stop at the stop sign at the intersection and was driving between 30 to 35 miles per hour when she drove into the ditch. He mentioned that while Spillers initially named three different drivers, she eventually settled on a version of her account in which she claimed that Thomas Brian Thompson was driving at the time of the accident. Manuel noted that Spillers

was unsteady on her feet, and had glassy eyes and slurred speech. According to Deputy Manuel, he believed that Spillers was driving while intoxicated, did not perceive the stop sign in time, failed to stop, and drove into the ditch. He also testified that he believed Spillers's driving while intoxicated caused Vaughn's death.

Detective G. Hayes, also a certified accident reconstructionist, testified that he investigated the accident and concluded that Spillers was driving and failed to stop at the stop sign before driving into the ditch. Hayes also opined that Spillers's driving while intoxicated caused Vaughn's death.

Peneica Driver, a friend of Vaughn and Spillers, also testified. According to Driver, Spillers called her after the accident and asked her to pick Spillers and Vaughn up from the hospital. Driver testified that, in that conversation, Spillers told Driver that Thomas Brian had been driving the car. Spillers later admitted to Driver that she had been driving the car at the time of the accident. Spillers also told Driver that she had tried to pull Vaughn out of the car and he fell out of the car and onto her.

Cory Myers, a volunteer firefighter who was dispatched to the accident scene, also testified at trial. According to Myers, he and Scott Lyons, the assistant fire chief, pulled Vaughn out from under the car and secured him to a backboard. Myers testified that Vaughn did not initially have a pulse, but a faint pulse returned once someone administered CPR.

5

Forensic pathologist Nobby Mambo of the Galveston County Medical Examiner's Office also testified. He conducted an autopsy and opined that Vaughn's death was caused by spinal cord and brain injury which resulted from extreme force from an impact. He testified that either of these injuries could have killed Vaughn and added that it was highly unlikely that a short fall from the car into the ditch caused Vaughn's injuries.

The jury found Spillers guilty of intoxication manslaughter and sentenced her to 20 years' confinement. Spillers appealed.

**Sufficiency of the Evidence**

In her first and second issues, Spillers argues that the evidence is insufficient to support the jury's guilty verdict because the evidence showed that five factors other than her intoxicated driving could have caused Vaughn's death.

## A. Standard of Review

We review the sufficiency of the evidence in the light most favorable to the verdict and then determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Acosta v. State*, 429 S.W.3d 621, 624–25 (Tex. Crim. App. 2014) (first citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2789 (1979); then citing *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011); then citing *Brooks v. State,* 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)). This standard of review allows a jury to resolve

fact issues and to draw reasonable inferences from the evidence. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789). With respect to testimony of witnesses, the jury is the sole judge of the credibility and weight to be attached thereto, and when the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination. *Id*. (citing *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789).

In a sufficiency inquiry, direct evidence and circumstantial evidence are equally probative. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016) (citing *Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013)). Not every fact presented must directly indicate the defendant is guilty, so long as the cumulative force of the evidence is sufficient to support a finding of guilt. *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015) (citing *Beardsley v. State*, 738 S.W.2d 681, 685 (Tex. Crim. App. 1987) (en banc)).

B.    **Applicable Law**

A person commits the second degree felony of "intoxication manslaughter" if the person: (1) operates a motor vehicle in a public place . . . and (2) is intoxicated and by reason of that intoxication causes the death of another by accident or mistake. TEX. PENAL CODE. § 49.08. Section 6.04 of the Texas Penal Code provides, "A person is criminally responsible if the result would not have occurred but for his

7

conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." TEX. PENAL CODE § 6.04(a).

## C. Analysis

Spillers argues that the evidence was insufficient to permit the jury to conclude that her driving while intoxicated caused Vaughn's death. She asserts that five other factors could have caused Vaughn's death: (1) the "dangerous character of the intersection," (2) Vaughn's failure to wear a seat belt, (3) the air bags' failure to deploy, (4) Vaughn's fall from the car into the ditch, and (5) the manner in which the EMTs handled Vaughn. The State responds that the evidence is sufficient because it shows that none of these factors—alone—could have caused Vaughn's death. On the contrary, the State argues that the evidence establishes that Vaughn would not have died but for Spillers's driving while intoxicated.

At trial, the State presented evidence regarding the circumstances surrounding the collision and the nature of Vaughn's injuries. Deputy Manuel and Detective Hayes, both accident reconstructionists, and Nobby Mambo, the forensic pathologist who conducted Vaughn's autopsy, all testified that Spillers's driving while intoxicated caused Vaughn's death. And Mambo testified that extreme force was necessary to cause Vaughn's injuries, adding that it was highly unlikely that Vaughn's short fall from the car to the ditch after the accident caused his death.

8

While the jury also heard evidence that other factors may have contributed to Vaughn's injuries, a rational jury could conclude that none of these concurrent causes was sufficient to produce Vaughn's death. *See* TEX. PENAL CODE § 6.04(a) (person is criminally responsible if death would not have occurred but for her conduct, operating either alone or concurrently with another cause, unless the concurrent cause was sufficient to produce the result and the conduct of the actor clearly insufficient).

Based on the evidence presented, we conclude that a rational jury could have found beyond a reasonable doubt that Vaughn's death would not have occurred but for Spillers's driving while intoxicated, operating either alone or concurrently with another cause, and that none of the concurrent causes was sufficient to produce Vaughn's death. Thus, we conclude that the evidence was sufficient to support the jury's finding that Spillers's driving a motor vehicle in a public place while intoxicated caused Vaughn's death. *See Wooten v. State*, 267 S.W.3d 289, 296 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (holding where intoxicated driver alleged other road conditions caused the accident, "even if other factors contributed in some way to the accident, these factors were not clearly sufficient to cause the fatalities in the case"); *Martinez v. State*, 66 S.W.3d 467, 469–70 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (holding sufficient evidence supported

9

conclusion that truck driver's intoxication caused death of victims despite alleged improper loading and safety violations of truck).

We overrule Spillers's first and second issues.

## Motion to Suppress

In her third issue, Spillers contends that the trial court erred in denying her motion to suppress the results of her blood test. She argues that (1) her consent was invalid because she was intoxicated, had hit her head, was subjected to coercive pressures, and was not given *Miranda* warnings before she consented; and (2) the police lacked probable cause to arrest her for public intoxication and the results of the blood draw should be excluded as fruit of the unlawful arrest.

### A.    Standard of Review

We review a trial court's decision to deny a motion to suppress under a bifurcated standard of review, giving almost total deference to the trial court's determination of historical facts that depend on credibility, and reviewing de novo the trial court's application of the law to those facts. *Tucker v. State*, 369 S.W.3d 179, 184 (Tex. Crim. App. 2012) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).  We view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007).  The trial court is the sole trier of fact and judge of the weight and credibility of the witnesses and the weight to be given their testimony. *Id*. at 24–25.  We will sustain the trial

court's ruling if it is "reasonably supported by the record and correct on any theory of law applicable to the case." *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003) (en banc) (citing *Wilover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002)).

**B.      Does the record support the trial court's implicit finding that Spillers was not in custody, and *Miranda* had not been triggered, when she consented to the blood draw?**

### 1.      Applicable Law

A person is in "custody" only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing *Stansbury v. California*, 511 U.S. 318, 322, 114 S. Ct. 1526, 1528–30 (1994)). Persons temporarily detained for the purposes of an investigation are not "in custody" for *Miranda* purposes, and the right to *Miranda* warnings is not triggered during an investigative detention. *See Berkemer v. McCarty*, 468 U.S. 420, 438–40, 104 S. Ct. 3138, 3149–51 (1984). A temporary detention, in which the person is not free to leave, while the police officer investigates whether a crime has been committed is constitutionally permissible. *Koch v. State*, 484 S.W.3d 482, 489 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citing *State v. Sheppard*, 271 S.W.3d 281, 289 (Tex. Crim. App. 2008)). And officers may use such force as is

11

reasonably necessary to effect the goal of the detention: investigation, maintenance of the status quo, or officer safety. *Id*.

In determining whether a defendant was "in custody" for the purpose of applying *Miranda,* an appellate court "conducts a factual review in examining the circumstances surrounding the interrogation" and "makes an ultimate legal determination whether a reasonable person would not have felt at liberty to leave." *State v. Saenz*, 411 S.W.3d 488, 493 (Tex. Crim. App. 2013); *Koch*, 484 S.W.3d at 488. Whether a detention is an investigative detention or an arrest depends upon factors such as the amount of force displayed, the duration of a detention, the efficiency of the investigative process and whether it was conducted at the original location or she was transported to another location, and the police's expressed intent. *Sheppard*, 271 S.W.3d at 291.

### 2. Analysis

Spillers argues that the trial court erred in denying her motion to suppress because she was in custody but not given *Miranda* warnings before she consented to the blood draw. The State responds that Spillers was not "in custody" but rather subject to an investigative detention. Thus, *Miranda* warnings were not required.

Deputy Manuel testified that he was dispatched to a home because there was an intoxicated person on the front lawn. After he arrived and learned that Spillers had been involved in an accident nearby, he drove her in the back seat of his patrol

car, un-handcuffed, to find the accident scene. Deputy Manuel testified that Spillers was not under arrest and that he did not tell her that she was.

Once they arrived at the scene of the accident, Spillers waited in the patrol car, still un-handcuffed, while Deputy Manuel investigated. The video recording reflects that Spillers waited in the patrol car for slightly more than an hour while Deputy Manuel assessed the scene and spoke to other responders and the special prosecutor who had arrived. There is no evidence or claim that the duration of the detention was longer than necessary for an investigation involving a serious accident with resulting serious injuries. *See, e.g.*, *Alvarado v. State*, 468 S.W.3d 211, 217–19 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (holding approximately one-and-a-half hour investigative detention was reasonable where alleged delay was for legitimate law enforcement purpose while officers investigated accident); *Josey v. State*, 981 S.W.2d 831, 844–45 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (concluding 90-minute detention was reasonable in light of officers' efforts to dispel or confirm their suspicions and investigate incident). Nor is there evidence that Manuel used force or threats against Spillers.

Spillers asserts that she was in custody because Deputy Manuel refused to let her leave to use a restroom or relieve herself on the side of the road. But "*one is not free to leave both when arrested and when temporarily detained for an investigation.*" *Francis v. State*, 896 S.W.2d 406, 410 (Tex. App.—Houston [1st

13

Dist.] 1995), *pet. dism'd*, 922 S.W.2d 176 (Tex. Crim. App. 1996). Thus, the fact that Manuel did not permit Spillers to leave the scene during the ongoing investigation of a serious accident, alone, does not elevate the temporary detention to an arrest. *Koch*, 484 S.W.3d at 489 (officers may use such force as is reasonably necessary to effect goal of detention: investigation, maintenance of status quo, or officer safety).

Spillers also argues that *Miranda* was triggered because Deputy Manuel and the special prosecutor decided to arrest her for public intoxication before Manuel asked for consent. But the subjective intent of the officer is relevant only to the extent that it is manifested to the defendant through words and actions of law enforcement officials. *See Dowthitt*, 931 S.W.2d at 254–55; *see also Koch*, 484 S.W.3d at 489 ("We do not consider the subjective beliefs of the detaining officer when determining whether a suspect is in custody" unless "the officer manifests his belief to the detainee that he is a suspect."). Here, it is undisputed that Manuel did not inform Spillers that she was a suspect or under arrest until *after* she consented to the blood draw.

In sum, considering all of the circumstances in the light most favorable to the trial court's ruling, we conclude that the trial court did not err in concluding that *Miranda* was not triggered because, at the time she consented to the blood draw, Spillers had not been in custody but, rather, was merely subject to a reasonable

14

investigative detention. *See State v. Stevenson*, 958 S.W.2d 824, 828–29 (Tex. Crim. App. 1997) (en banc) (holding detention and questioning by police officer during an accident and DWI investigation, without more, was not custody); *Koch*, 484 S.W.3d at 489–90 (temporary detention in handcuffs in back of patrol car during DWI investigation did not amount to arrest so as to trigger *Miranda* rights); *Hauer v. State*, 466 S.W.3d 886, 891–92 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (holding handcuffing visibly intoxicated defendant and placing him in back of patrol car after accident was consistent with investigative detention and did not rise to level of arrest).

## C. Does the record support the trial court's determination that Spillers freely and voluntarily consented to the blood draw?

### 1. Applicable Law

The Fourth Amendment protects against unreasonable searches and seizures. U.S. CONST. amend. IV; *State v. Villarreal*, 475 S.W.3d 784, 795 (Tex. Crim. App. 2015). The taking of a blood specimen is a search and seizure under the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 767, 86 S. Ct. 1826, 1834 (1966); *Villarreal*, S.W.3d at 796–97. In general, to comply with the Fourth Amendment, a search of a person pursuant to a criminal investigation (1) requires a search warrant or a recognized exception to the warrant requirement, and (2) must be reasonable under the totality of the circumstances. *Villarreal*, S.W.3d at 795.

Voluntary consent to search is among the recognized exceptions to the warrant requirement. *Id.* at 799–808 (discussing consent, automobile, search incident to arrest, and special-needs exceptions); *see McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003). A driver's consent to a blood test must be free and voluntary, and it must not be the result of physical or psychological pressures brought to bear by law enforcement. *Fienen v State*, 390 S.W.3d 328, 333 (Tex. Crim. App. 2012) (citing *Meekins v. State*, 340 S.W.3d 454, 458–59 (Tex. Crim. App. 2011)); *Hutchins v. State*, 475 S.W.3d 496, 498 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd).

The ultimate question is whether the person's 'will has been overborne and his capacity for self-determination critically impaired' such that his consent to search must have been involuntary. *Fienen*, 390 S.W.3d at 333 (first citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 93 S. Ct. 2041, 2047 (1973); then citing *Meekins*, 340 S.W.3d at 460). In conducting this inquiry, courts consider the following factors: (1) the defendant's age, education and intelligence; (2) the length of the detention; (3) any constitutional advice given to the defendant; (4) the repetitiveness of the questioning; (5) the use of physical punishment; (6) whether the defendant was arrested, handcuffed, or in custody; (7) whether *Miranda* warnings were given; and (8) whether the defendant had the option to refuse to consent. *Cisneros v. State*,

16

290 S.W.3d 457, 464 (Tex. App.—Houston [14th Dist.] 2009, pet. dism'd) (citing *Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000)).

We review the totality of the circumstances of a particular police-citizen interaction from the point of view of the objectively reasonable person. *Fienen*, 390 S.W.3d at 333 (quoting *Meekins*, 340 S.W.3d at 459). The validity of an alleged consent is a question of fact, and the State must prove voluntary consent by "clear and convincing" evidence. *Id.*; *Hutchins*, 475 S.W.3d at 498. "Because issues of consent are necessarily fact intensive, a trial court's finding of voluntariness must be accepted on appeal unless it is clearly erroneous." *Meekins* 340 S.W.3d at 460.

## 2. Analysis

Spillers contends that the trial court should have suppressed the results of her warrantless blood draw because she did not freely and voluntarily consent. The State responds that the trial court's finding that Spillers freely and voluntarily consented is supported by the record and not clearly erroneous.

Deputy Manuel testified that he first encountered Spillers at a home at night, and learned that there had been an accident nearby. He drove his patrol car, with Spillers un-handcuffed and in the back seat, to the scene of the accident. Manuel had Spillers wait in the patrol car while he investigated, and she cooperated. Manuel testified that he returned to the car and asked Spillers whether she would consent to

17

a blood draw and that she orally consented. He also testified that he did not threaten Spillers or otherwise coerce her consent.

Deputy Manuel's in-car video recording corroborates his testimony. It shows that the exchange between Spillers and Deputy Manuel was pleasant throughout. When Manuel first asked Spillers whether she would consent to a blood draw, she unequivocally responded: "Sure." He repeated the question, for the stated purpose of clarity, and Spillers responded "Of course." Nothing in the video or the record suggests that any physical or psychological pressures were brought to bear to secure Spillers's consent. In particular, there is no evidence of an officer's display of a weapon, threats, promises, deception, physical touching, or a demanding tone of voice or language. *See Meekins*, 340 S.W.3d at 464. Nor does Deputy Manuel's decision to reiterate his request for consent suggest coercion. *Id.* In short, none of the evidence about their exchange suggests coercive pressure, i.e., that Spillers's will was overborne or her capacity for self-determination critically impaired such that her consent must have been involuntary. *Fienen*, 390 S.W.3d at 333.

The record does contain some evidence weighing in Spillers's favor. For example, when Spillers, seated in the back seat of the patrol car, asked Manuel, "Can I pee?," Manuel responded that she could not, because no female escort was present and he could not let her relieve herself on the side of the road. Likewise, Spillers was not Mirandized before consenting. But we have already determined that it was

reasonable for Manuel to require Spillers to remain on the scene during the ongoing investigation, and *Miranda* warnings, while a factor, are not required or essential. *Meeks v. State*, 692 S.W.2d 504, 510 (Tex. Crim. App. 1985) (en banc) (warning is of evidentiary value in determining whether consent valid, but not required); *see Hutchins*, 475 S.W.3d at 500–01. On the other hand, evidence relevant to other factors favors the State: Spillers was in her forties at the time (neither inexperienced nor frail from old age), she was not handcuffed in the patrol car, and she was able to communicate intelligently.

Based on the totality of the circumstances, we conclude that the trial court's determination that Spillers voluntarily consented to the blood draw is supported by the record and is not clearly erroneous. *See Meekins,* 340 S.W.3d at 461–65 (concluding defendant's response of "Yes" or "I guess" to officer's request to search car constituted valid consent); *Harrison v. State*, 205 S.W.3d 549, 552–53 (Tex. Crim. App. 2006) (holding defendant's consent to urine sample was voluntary despite police not telling her that she could refuse).

**D.    Did the trial court err in concluding Deputy Manuel had probable cause to arrest Spillers for public intoxication?**

**1.    Applicable Law**

A person commits the offense of public intoxication if the person appears in a public place while intoxicated to the degree that the person may endanger the person or another. TEX. PENAL CODE § 49.02. "The danger need not be immediate."

*Reynolds v. State*, 902 S.W.2d 558, 560 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) (quoting *Gallagher v. State,* 778 S.W.2d 153, 154 (Tex. App.—Houston [1st Dist.] 1989, no pet.)). It is sufficient if the accused renders himself or others "subject to potential danger." *Id.* (quoting *Gallagher,* 778 S.W.2d at 154).

In determining whether the officers had probable cause to arrest a person for public intoxication, the reviewing court must determine whether the officers' knowledge at the time and under the circumstances would warrant a prudent person's belief that appellant had committed or was committing the offense. *Bell v. State*, 866 S.W.2d 284, 287 (Tex. App.—Houston [1st Dist.] 1993, no pet.). Whenever an intoxicated person is in an officer's presence and there is probable cause to arrest him for public intoxication, the officer may do so without a warrant, even though a warrantless arrest of that person for the offense of driving while intoxicated would be unlawful. *Mathieu v. State*, 992 S.W.2d 725, 728 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

### 2. Analysis

Spillers argues that her arrest for public intoxication was not supported by probable cause and that the results of her blood draw are inadmissible because they are the fruit of the unlawful arrest. The State argues that the police had probable cause to arrest Spillers for public intoxication because Deputy Manuel perceived Spillers to be intoxicated, slurring, and unsteady on her feet.

Deputy Manuel testified that when he arrived at the home of Blair and Foxley, they reported that Spillers smelled of alcohol, had asked them not to call the police, and had admitted driving. Spillers told Manuel that she was involved in a one-car accident and denied driving but told conflicting stories about what happened, claiming at different times that three different people had been driving. Deputy Manuel testified that Spillers was bloody, with a laceration on her forehead, and that he perceived Spillers to be intoxicated because she was slurring, unsteady on her feet, and had glassy eyes.

Based on the totality of the circumstances, we conclude that the trial court did not err in finding that there was probable cause to make an arrest for public intoxication, because a reasonable officer would have been warranted in believing that Spillers was intoxicated to the degree that she could endanger herself or another. *See Reynolds*, 902 S.W.2d at 560 (holding probable cause supported public intoxication arrest where defendant was visibly intoxicated and involved in a two-car accident though police did not see him driving); *Bell*, 866 S.W.2d at 287 (concluding there was probable cause to support public intoxication arrest where appellant slurred his speech and appeared abusive and combative).

We overrule Spillers's third issue.

**Jury Instruction**

Spillers argues that the trial court erred by refusing to include in its charge a 1.5-page article 38.23 jury instruction setting forth the law on when a person is deemed to be in custody, and when consent is deemed free and voluntary. She argues that the charge given failed to provide the jury with a reliable basis on which to decide whether Spillers's blood was illegally obtained. In response, the State argues the trial judge correctly refused the proposed instruction because there was no disputed issue of material fact that would give rise to a need for the proposed instruction.

**A.     Standard of Review and Applicable Law**

In analyzing a jury-charge issue, we first determine whether error exists. *See Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003) (en banc); *Tottenham v. State*, 285 S.W.3d 19, 30 (Tex. App.—Houston [1st Dist.] 2009, pet ref'd). Only if we find error do we consider harm. *See Tottenham*, 285 S.W.3d at 30.

Under article 38.23, the trial court must exclude any evidence that it finds, as a matter of law, was obtained in violation of the Constitution or the laws of the United States or of the State of Texas. TEX. CODE. CRIM. PROC. art. 38.23(a); *Robinson v. State,* 377 S.W.3d 712, 719 (Tex. Crim. App. 2012). However, a defendant's right to the submission of jury instructions under article

38.23(a) is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation. *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007). To obtain the instruction, a defendant must show: (1) the evidence heard by the jury raises an issue of fact; (2) the evidence on that fact is affirmatively contested; and (3) that contested factual issue is material to the lawfulness of the challenged conduct in obtaining the evidence. *Id*.

If there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone, as a question of law. *Id*. And if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence. *Id*. The disputed fact must be an essential one in deciding the lawfulness of the challenged conduct. *Id*. at 511.

## B. Analysis

In her fourth issue, Spillers contends that the trial court erred in refusing to include an instruction in the jury charge regarding when a person is considered to be "in custody" and an instruction that if the jury finds that Spillers was "in custody" and "was questioned by Deputy Manuel in a manner likely to result in an incriminating answer," "was not given warnings, or did not waive her rights, or both," then they must disregard any evidence obtained by such custodial interrogation. Spillers further contends that the trial court erred in denying her

request for an instruction regarding when consent to a blood draw is valid and that if Spillers did not voluntarily consent to the extraction of a sample of her blood, then the jury must disregard any evidence obtained by that extraction.

We conclude that the trial court did not err in refusing the requested instruction because Spillers failed to raise a factual issue material to the lawfulness of the challenged police conduct in obtaining the blood draw. The evidence relevant to custody and consent is undisputed. In particular, Spillers presented no evidence to controvert the in-car video recording or Deputy Manuel's testimony regarding the circumstances under which she consented to the blood draw and was detained in the back of Deputy Manuel's patrol car. Rather, she argues that the undisputed facts support a conclusion that she did not validly consent to the blood draw and was "in custody" and entitled to *Miranda* warnings.

Because Spillers does not identify, and the record does not reveal, conflicting evidence raising a fact issue that would entitle her to an article 38.23 instruction, we hold that the trial court did not err when it refused to submit her proposed jury instruction. *See Hauer*, 466 S.W.3d at 894 (holding appellant was not entitled to jury instruction on issue of custody where no conflicting facts were presented regarding the circumstances under which appellant was detained); *McRae v. State*, 152 S.W.3d 739, 748 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (holding no jury instruction was required because there were no facts in dispute).

24

We overrule Spillers's fourth issue.

## Conclusion

We affirm the trial court's judgment.


                                    Rebeca Huddle
                                    Justice

Panel consists of Justices Keyes, Bland, and Huddle.

Do not publish.  TEX. R. APP. P. 47.2(b).