**Opinion issued April 14, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00281-CR

———————————

**LAUREN OLSEN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 16th District Court**
**Denton County, Texas[1]**
**Trial Court Case No. F17-2202-16**

---

## O P I N I O N

A jury convicted appellant, Lauren Olsen, of driving while intoxicated with

a child passenger. *See* TEX. PENAL CODE § 49.045. The trial court sentenced Olsen

---

[1]   The Texas Supreme Court transferred this appeal from the Court of Appeals for
the Second District of Texas. *See* TEX. GOV'T CODE § 73.001 (authorizing transfer
of cases between courts of appeals).

to one year in a state jail facility. In two issues on appeal, Olsen asserts that the trial court erred by denying her request for a jury instruction under Article 38.23 of the Texas Code of Criminal Procedure and by denying her motion for a new trial based on newly discovered evidence. We affirm.

## Background

On a spring evening, Officer C. Brown with the City of Lewisville Police Department noticed a disabled vehicle stopped in a turn lane as he was patrolling South Valley Parkway. Brown parked behind Olsen's vehicle, which was still running, activated his lights, and approached the driver's side to offer assistance. He noticed Olsen talking on the phone. He also noticed two young children in car seats behind her.

While assessing the situation, Brown learned that Olsen had left a barbecue in Lewisville over an hour earlier but had only traveled two miles. Olsen told him that she was driving to her home in Sherman, but her car was pointed in the opposite direction. She said she was familiar with Lewisville as she had lived there before. Olsen then told Brown that her tires had blown out. He confirmed that two tires on the left side of her vehicle were flat. There was no other damage to the vehicle. When Brown inspected the tires, he noticed a ring of chalky white residue on them, which appeared to be marks from contact with the painted curb. The rubber pointed outward from the holes in the tires. Olsen got out of her car and

2

bent down to inspect the tires. When Brown asked Olsen whether she had consumed alcohol at the barbecue, she denied it.[2]

A tow truck driver arrived at the scene. The tow truck driver noticed the damage to Olsen's tires and told Brown that he believed that the car had forcefully hit the curb. The tow truck driver believed the car had hit the curb, rather than had its tires slashed, because the side walls of the tires were ripped, the rims had bent, and there was rubber debris on the curb where it appeared that Olsen's car had hit it.

What began as a community caretaking stop evolved into a criminal investigation. Brown began to suspect that Olsen was intoxicated, but he was not sure whether alcohol or another substance was the cause. He came to this conclusion based on the totality of the circumstances, including (1) Olsen was driving in the opposite direction of her stated destination; (2) she made other inconsistent statements about who she was talking to on the phone; (3) her eyes were red and watery; (4) her tires appeared to have white residue on them from hitting the curb; and (5) the tow truck driver told Brown that Olsen's tires were flat because she hit the curb.

---

[2] At trial, Brown testified that a few months after the initial arrest, he was summoned to a family hearing involving Olsen. At this hearing, Olsen testified under oath that she had consumed "three beers while [she] was at the party."

Brown eventually conducted three field sobriety tests and concluded that Olsen's performance on all tests showed intoxication. Brown administered the horizontal gaze nystagmus test, and Olsen exhibited six clues of intoxication. After performing the walk-and-turn test, Olsen exhibited three clues of intoxication. Finally, Olsen performed the one-leg-stand test and exhibited two clues of intoxication. Brown then arrested Olsen for driving while intoxicated with child passengers.

Brown noticed that Olsen had a faint odor of alcohol on her after he concluded the DWI investigation and was placing her in the back seat of his patrol car. Brown asked Olsen if she would consent to a blood draw, and she orally agreed and later consented in writing. Brown then transported Olsen to a hospital and requested a qualified technician to draw her blood. The lab results revealed that Olsen's blood-alcohol concentration was above the legal limit at 0.135. A person is intoxicated if they have a blood-alcohol concentration of 0.08 or higher. *See* TEX. PENAL CODE § 49.01(2)(B).

After the close of evidence and based on Brown's testimony about the circumstances that gave him probable cause to arrest Olsen, Olsen requested the following exclusionary rule instruction under Article 38.23(a):

> If you believe, or have reasonable doubt, that the evidence was obtained in violation of the provisions of this Article [38.23], then and in such event, the jury shall disregard any such evidence so obtained. Specifically, if you believe that [Olsen] did not exhibit clues on the

4

standardized field test consistent with intoxication according to the Standardized Field Sobriety Test, did not have bloodshot or watery eyes, did not have damage to her car consistent with impact caused by impairment, and was not confused about which person she called from the site of the arrest, or have a reasonable doubt thereof, you shall disregard the blood alcohol test results.

The trial court denied the requested jury instruction. The jury found Olsen guilty of the charged offense and sentenced her to one-year confinement in the Texas Department of Criminal Justice State Jail Division.

Olsen filed a motion for new trial based on newly discovered evidence. Specifically, Olsen discovered that the pipette[3] used in analyzing her blood sample failed an external test and was taken out of use. The trial court held a hearing on the motion for new trial regarding the pipette's failure. N. Kumar, a forensic scientist at the Texas Department of Public Safety, testified as a designated expert about his testing of Olsen's blood sample. Kumar had also testified during Olsen's criminal trial.

At the hearing on the motion for new trial, Kumar testified that he became aware that the pipette failed verification approximately three months before Olsen's trial. After the jury returned a guilty verdict, Kumar provided the District Attorney's Office with the failed verification log. The removal of the same amount of blood is necessary to treat all unknown samples the same as calibration samples.

---

[3]      A pipette is a mechanical device used to pick up samples of blood from a blood tube and place them in a vial when testing blood-alcohol concentration.

5

Accuracy means that the pipette removes the prescribed amount of liquid. Precision means removing the same amount of liquid every time, regardless of whether it is accurate. Precision is more important than accuracy, according to Kumar. Failure to remove the same amount of blood causes a significant variation in the test results. However, even if the accuracy of the pipette failed but the pipette was still precise, the results would still be the same because the unknown blood samples are being treated the same as the calibration samples. Kumar then confirmed that he had no reason to notify the trial court of any issues with the testing of Olsen's blood sample or the entire batch. Stated differently, Olsen's blood-alcohol concentration of 0.135—exceeding the legal limit in Texas—was unaffected by the results of the slight variation of the defective pipette testing.

The trial court then questioned Kumar on how he would have known whether a pipette was malfunctioning. Kumar explained, "If there is any issue with the pipette or any issue with the testing in general, it would have been reflected in those known ethanol standards that are run throughout the entire batch." However, in the testing of Olsen's blood sample, the calibration curve did not show any glaring issues with the known ethanol standards.

B. Welch, a toxicology chemist at the Southwestern Institute of Forensic Science, also testified at the hearing on the motion for new trial. Welch did not

testify at trial. Welch was responsible for retesting Olsen's blood sample for its alcohol concentration before the trial.

By explaining the verification procedure of the pipette, Welch stated that if a pipette subsequently failed a verification, the lab could still rely on internal standards and quality control measures that are contained within each batch tested to determine whether the pipette worked properly in testing the batch. In this case, Welch explained that there was a malfunction with the pipette months after Olsen's blood was tested, and, for this reason, the result of the trial would not change because the malfunction did not affect Olsen's blood test or the batch in which her blood was tested. Welch stated that issues with the retested batch would not be reported as problematic unless the results reflected a difference of more than 0.007 grams per milliliters. After Welch retested Olsen's blood sample, nothing indicated that there were any significant issues to report. In fact, when Welch conducted a separate examination of Olsen's blood sample, the results only reflected a difference of 0.006 grams per milliliters, which was within an acceptable tolerance for quality control.

After considering the evidence, the trial court denied the motion for new trial. Olsen appealed.

## Claim of Jury-Charge Error

In her first issue, Olsen asserts that the trial court erred by failing to submit an instruction to the jury on illegally obtained evidence under Article 38.23. Olsen contends that an Article 38.23 instruction was required because Brown did not have probable cause to arrest her in light of the totality of circumstances. Therefore, Olsen argues the jury charge should have included the text of Article 38.23, an explanation of probable cause, and an instruction to disregard the blood-alcohol test results if the jury believed that Olsen did not exhibit certain signs of intoxication.

### A.    Standard of review

The trial court must provide the jury with a written charge "that accurately sets out the law applicable to the specific offense charged." *Oursbourn v. State*, 259 S.W.3d 159, 179 (Tex. Crim. App. 2008); TEX. CODE CRIM. PROC. art. 36.14. We review a claim of alleged charge error by determining whether the charge was erroneous, and if it was, we conduct a harm analysis. *Celis v. State*, 416 S.W.3d 419, 423 (Tex. Crim. App. 2013).

### B.    Trial court did not err by refusing the exclusionary rule instruction

Article 38.23 provides: "No evidence obtained by an officer . . . in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted against the

accused on the trial of any criminal case." TEX. CODE CRIM. PROC. art. 38.23(a).

When an issue exists as to whether the evidence was obtained illegally, the jury must be instructed that "if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of [Article 38.23], then . . . the jury shall disregard such evidence so obtained." *Id.*

The trial court must issue an Article 38.23 instruction if the defendant establishes that: (1) the evidence heard by the jury raises an issue of fact; (2) the evidence on that fact is affirmatively contested; and (3) the contested factual issue is material to the lawfulness of the challenged conduct in obtaining the evidence. *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007). The trial court must provide the jury with an Article 38.23 instruction when an issue of fact is raised as to each factor supporting probable cause. *Id.* To raise a fact issue, the facts relied upon to establish probable cause must be in controversy. *Rose v. State*, 470 S.W.2d 198, 200 (Tex. Crim. App. 1971) (explaining that a fact issue for probable cause can be raised by adducing testimony of other witnesses to controvert the testimony of the officers on each issue); *Shpikula v. State*, 68 S.W.3d 212, 217 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (affirming trial court's refusal to issue Article 38.23 instruction when appellant failed to raise an issue of disputed fact because "there was no evidence to controvert the deputies' testimony"). Simply raising the issue through cross-examination is insufficient to

create a factual dispute for purposes of an Article 38.23(a) instruction, although the witness's answers to those questions might. *Oursbourn*, 259 S.W.3d at 177 ("This factual dispute can be raised only by affirmative evidence, not by mere cross-examination questions or argument."); *Madden*, 242 S.W.3d at 514 ("It is only the answers that are evidence and may create a dispute. Even the most vigorous cross-examination implying that Officer Lily is the Cretan Liar does not raise a disputed issue. There must be some affirmative evidence of "did not speed" in the record before there is a disputed fact issue.").

"The facts are in controversy if the issue of their validity is raised by the evidence." *Ashley v. State*, No. 13-01-00418-CR, 2002 WL 34230837, at *2 (Tex. App.—Corpus Christi June 27, 2002, no pet.) (mem. op., not designated for publication) (citing *Jordan v. State*, 562 S.W.2d 472, 472 (Tex. Crim. App. 1978)); *see also Madden*, 242 S.W.3d at 511 ("The disputed fact must be an essential one in deciding the lawfulness of the challenged conduct."). That is, in the absence of conflicting testimony or evidence, the trial court does not err in omitting the instruction. *See Lackey v. State*, 638 S.W.2d 439, 454 (Tex. Crim. App. 1982) (en banc).

Probable cause to arrest a person for driving while intoxicated with a child passenger exists if the officer finds the arrestee in circumstances indicating that the arrestee committed the offense, even though the officer did not witness the arrestee

10

driving a vehicle. *State v. Rudd*, 255 S.W.3d 293, 300 (Tex. App.—Waco 2008, pet. ref'd) (citing *Dyar v. State*, 125 S.W.3d 460, 468 (Tex. Crim. App. 2003)). A warrantless arrest of a person for driving while intoxicated is valid as long as the officer had probable cause to arrest for public intoxication. *Reynolds v. State*, 902 S.W.2d 558, 560 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) (citing *Segura v. State*, 826 S.W.2d 178, 185 (Tex. App.—Dallas 1992, pet. ref'd)).

Brown's testimony revealed several factors supporting probable cause to believe Olsen was intoxicated: (1) Olsen's vehicle was pointed in the opposite direction of her destination; (2) Olsen had been driving for an hour but was only two miles from the barbecue; (3) she had bloodshot, watery eyes; (4) she was confused about who she called from the scene; (5) the damage to her tires was consistent with hitting the curb forcefully due to impairment; and (6) she exhibited clues of intoxication during field sobriety tests. Olsen asserts that she raised fact issues about probable cause to challenge the appearance of her eyes, her confusion about who she called, and the tire damage.

The purpose of the Article 38.23 instruction is to enable the jury to disregard unlawfully obtained evidence. *See Dao v. State*, 337 S.W.3d 927, 940 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). In determining whether the trial court was required to submit an Article 38.23 instruction, we consider whether these disputed fact issues were material to the determination of whether Brown had

11

probable cause to arrest Olsen for driving while intoxicated with a child passenger. *See Madden*, 242 S.W.3d at 510; *Rocha v. State*, No. 03-07-00579-CR, 2009 WL 1364347, at *7 (Tex. App.—Austin May 12, 2009, no pet.).

Probable cause for a warrantless arrest exists when the arresting officer possesses reasonably trustworthy information sufficient to warrant a reasonable belief that an offense has been committed. *See Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). Probable cause requires more than "bare suspicion" but "less than . . . would justify . . . conviction." *Brinegar v. United States*, 338 U.S. 160, 175 (1949). "The test for probable cause is an objective one, unrelated to the subjective beliefs of the arresting officer, and it requires a consideration of the totality of the circumstances facing the arresting officer." *Amador*, 275 S.W.3d at 878 (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).

Olsen alleges three instances where cross-examination revealed inconsistencies in Brown's testimony. First, Olsen contends that she raised a fact issue regarding the appearance of her eyes. At trial, Brown initially testified that Olsen's eyes were red and watery. On cross-examination, Brown conceded that there may have been a possibility that Olsen's eyes were red and watery due to the stressful situation.

Second, Olsen asserts that she raised a fact issue about her alleged confusion and inconsistent statements about her telephone call. One of the reasons Brown

12

concluded that Olsen was intoxicated according to his testimony was that she provided inconsistent answers to questions about who she was talking to on the phone when he initially encountered her. Specifically, Olsen stated that she called one of her children's grandparents to come assist her and her children after her tires blew out but then seemed surprised when a grandparent showed up at the scene. On cross-examination, Olsen's counsel asked Brown to explain the inconsistencies of Olsen's statements that he attributed to her intoxication. Brown stated that he could not identify exactly who Olsen was talking to on the phone because she vaguely told him that she was speaking to one of her children's grandparents. Brown acknowledged that the children have two maternal grandparents and two paternal grandparents and testified that there was a possibility that she could have been speaking to one of four individuals. Brown later testified that Olsen appeared confused because she stated that "I don't know why she's here" and "I don't want her to be here" when her children's paternal grandmother arrived on the scene. At the conclusion of his explanation of Olsen's inconsistencies, Olsen's counsel asked Brown, "And you think that that's evidence of her intoxication and not because she's got two grandmothers?" Brown responded, "No."

Finally, Olsen argues that she raised a fact issue about the appearance and condition of her tires. Brown testified at length that he believed her flat tires were

13

caused by her impairment. He came to this conclusion because the "white paint marks would be consistent with rubbing a curb." Despite this observation, neither Brown nor the tow truck driver took pictures of the tires and thus, no pictures were introduced into the record. Later in the trial, on cross-examination, Brown confirmed that Olsen told him that she had tire blowouts.

To prevail though, Olsen had to do more than raise fact issues as to three probable cause factors: she had to challenge all material facts. *See Merriweather v. State*, 501 S.W.2d 887, 891 (Tex. Crim. App. 1973) (holding that, when specific facts used by court to determine existence of probable cause were uncontested, defendant was not entitled to jury instruction concerning other facts—which were contested—that did not defeat finding of probable cause); *see also Rocha*, 2009 WL 1364347, at *7 (rejecting a disputed fact because it was "not 'essential' to the determination" of the issue of probable cause); 40 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 4.194 (2d ed. 2001) ("Jury submission, then, is only required when facts are raised that are necessarily determinative of the admissibility of the challenged evidence."). The probable cause facts that Olsen did not challenge are fatal to her claim.

On appeal, Olsen did not contest that she exhibited "clues on the standardized field test[s] consistent with intoxication." Her results on the horizontal gaze nystagmus test (HGN), the walk-and-turn test, and the one-leg

stand test all were consistent with intoxication. Moreover, one of the field sobriety tests, the HGN, involves involuntary eye movement, thus it was unaffected by the officer's subjective perception of Olsen's physical and mental faculties. *See, e.g., Kamen v. State*, 305 S.W.3d 192, 194 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).

Brown's statement at one point that Olsen appeared to have the normal use of her physical and mental faculties based on his observation of Olsen's condition does not contradict the clues of intoxication she showed on the standardized field sobriety tests. The dissent mistakenly equates Brown's subjective perception of Olsen's physical and mental faculties with her performance on the standardized field sobriety tests. Although subjective perceptions, such as whether a driver is stumbling or slurring her words, and standardized field sobriety tests can both help an officer determine whether someone has lost the normal use of their physical and mental faculties due to substance use, they are not the same thing.

Brown's subjective perception of Olsen's physical and mental faculties is not a fact supporting probable cause in this case. Olsen's performance on the standardized field sobriety tests that are administered throughout the United States, however, is a *material* fact supporting probable cause for Olsen's arrest. And it is one she did not contest at trial or on appeal. Because Olsen did not challenge the administration of any of the field sobriety tests or her performance on those tests,

15

particularly the HGN, she failed to contest all facts material to the probable-cause determination. *Compare Serrano v. State*, 464 S.W.3d 1, 7 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (evidence raised a fact issue about whether the officer complied with the 15-minute observation requirement for breath test), *with Rocha*, 2009 WL 1364347, at *8 (appellant failed to present contradicting evidence to contest each fact supporting the officer's probable-cause determination); *see also Rose*, 470 S.W.2d at 200 (considering the totality of the circumstances and concluding that an Article 38.23 instruction was not required because appellant called no witnesses "to controvert the testimony of the officers."). Olsen's performance on the field sobriety tests alone supported probable cause to arrest her, *see Alvarado v. State*, 468 S.W.3d 211, 219 (Tex. App.—Houston [1st Dist.] 2015, no pet.), and was not contested.

The dissent's approach arbitrarily limits the probable cause factors to a subset of the totality of the circumstances. Instead, probable cause is objective, looking to the totality of the circumstances, not restricted by the subjective motivations of the officer.[4] The Court does not assess probable cause facts in

---

[4] The dissent cites no case stating that the probable cause inquiry is limited to the facts subjectively relied upon by the officer, particularly where the officer lists several factors on direct examination, then in cross-examination lists one. The Court of Criminal Appeals decision in *Middleton v. State*, 125 S.W.3d 450 (Tex. Crim. App. 2003) (en banc), is not to the contrary. In *Middleton*, the issue was only whether the defendant stopped at a stop sign, not whether, over time, the defendant showed signs of intoxication that were confirmed by standardized field

isolation, using a divide-and-conquer approach. *See Minassian v. State*, 490 S.W.3d 629, 639 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (finding probable cause based on totality of record despite argument that gas-station visits were consistent with innocent conduct). In addition to the standardized field sobriety test results, there were other facts Olsen did not challenge that supported probable cause, including that she drove an hour but had only traveled two miles from the barbecue and that she was headed away from Sherman, her stated destination, despite being familiar with Lewisville. Because Olsen failed to contest all facts material to the lawfulness of her arrest in this case, we conclude that Olsen has not raised a fact issue essential to the determination of probable cause. Therefore, the trial court did not err by denying Olsen's request to submit an Article 38.23 instruction to the jury. *See Madden*, 242 S.W.3d at 510; *Rocha*, 2009 WL 1364347, at *7. We overrule Olsen's first issue.

## Motion for New Trial

In her second issue, Olsen contends that the trial court abused its discretion when it denied Olsen's motion for new trial. Olsen contends that a material fact—a defective pipette used in analyzing her blood sample—was not disclosed to her until after the trial. Olsen argues that if the trial court would have granted her

---

sobriety tests. *Id*. at 454. Indeed, the determination of probable cause is an objective one, analyzing whether the arrest was reasonable given the totality of the circumstances. *See, e.g., Whren v. United States*, 517 U.S. 806, 814 (1996).

17

motion for new trial, then "the jury would potentially have [had] the opportunity to hear from two separate blood evidence witnesses and consequently two separate toxicology screens, two separate practices of blood evidence testing, and two separate practices that are used in conducting verification and calibration testing." Stated differently, Olsen contends that she should be granted a new trial so that the jury could hear testimony from the witness who retested her blood but did not testify during the trial.

## A. Standard of review

We review a trial court's decision to deny a motion for new trial by determining whether there has been an abuse of discretion. *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003) (en banc). A trial court abuses its discretion if its decision to deny the motion for new trial was arbitrary or unreasonable. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995) (en banc). We view the evidence in the light most favorable to the trial court's ruling and will not overturn a trial court's decision to deny a motion for new trial unless "decision falls outside the zone of reasonable disagreement." *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016). The trial court has broad discretion to evaluate the credibility of witnesses and weigh the evidence to determine whether the new evidence will bring about a different result in a new trial. *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014); *Lewis*, 911 S.W.2d at 7.

18

**B.** **The trial court did not abuse its discretion by denying the motion for new trial**

Article 40.001 of the Texas Code of Criminal Procedure governs new trials based on material evidence. This statute states, "A new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." TEX. CODE CRIM. PROC. art. § 40.001. For a defendant to be entitled to a new trial based on newly discovered evidence, these four prongs must be satisfied:

(1) the newly discovered evidence was unknown or unavailable to the defendant at the time of trial;

(2) the defendant's failure to discover or obtain the new evidence was not due to the defendant's lack of due diligence;

(3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and

(4) the new evidence is probably true and will probably bring about a different result in a new trial.

*State v. Arizmendi*, 519 S.W.3d 143, 149 (Tex. Crim. App. 2017). Thus, the failure to establish one of these prongs would support the trial court's denial of the motion for new trial. It is undisputed that Olsen has established the first two prongs.

Olsen argues that she is entitled to a new trial under Article 40.001 of the Texas Code of Criminal Procedure and contends that the failed verification of the pipette used to extract Olsen's blood is not cumulative, collateral, or impeaching because Kumar—the State's designated expert who tested Olsen's blood—failed to

19

disclose during the trial any issues related to the mechanical device, and thus Olsen argues that there is a reasonable probability that the result would have been different. Although the State acknowledges that Kumar notified the State of this defective device after the trial and the State immediately disclosed this information to Olsen, the State argues that the evidence was immaterial impeachment evidence that would not have changed the result.

Impeachment evidence is any evidence, including evidence that can be used to impeach the State's witnesses, that "disputes or contradicts other evidence." *Ex parte Lalonde*, 570 S.W.3d 716, 724 (Tex. Crim. App. 2019) (quoting *Harm v. State*, 183 S.W.3d 403, 408 (Tex. Crim. App. 2006) (en banc)). "[E]ven if the newly-discovered evidence impeaches a witness, the evidence may still warrant a new trial if it is 'material and competent independent of its impeaching tendency.'" *Pinson v. State*, No. 11-17-00003-CR, 2018 WL 6722294, at *7 (Tex. App.— Eastland Dec. 21, 2018, pet. ref'd) (mem. op., not designated for publication) (quoting *Hale v. State*, 51 S.W.2d 611, 613 (1932)).

At the hearing on the motion for new trial, two witnesses testified about testing procedures and the acceptable standards for any variation of the results from those tests. The record reflects a difference between the initial test and the second test that was within the testing standard. Olsen argues that if the trial court would have granted her motion for new trial, then "the jury would potentially have

20

[had] the opportunity to hear from two separate blood evidence witnesses and consequently two separate toxicology screens, two separate practices of blood evidence testing, and two separate practices that are used in conducting verification and calibration testing." While this is true, Olsen fails to show how providing this information would have resulted in a different verdict given that the difference in the testing of the defective pipette did not change the results of her blood-alcohol concentration of 0.135. The malfunction of the pipette occurred months after Olsen's blood was tested. Thus, the verification malfunction did not affect Olsen's blood test or the batch in which her blood was tested. We cannot conclude that the evidence regarding the minor variation in the verification and calibration testing of the defective pipette would have likely produced a different outcome, independent of its impeachment potential.

For these reasons, we conclude that the trial court could have reasonably determined that the strength of the State's case was such that the new evidence identified by Olsen, even if true, was not compelling enough to probably bring about a different result in a new trial. *See Wallace*, 106 S.W.3d at 108–09 (affirming trial court's denial of a motion for new trial because the new evidence, even if true, was not compelling enough to overcome the strength of the prosecution's case); *see also Burdick v. State*, 474 S.W.3d 17, 23 (Tex. App.— Houston [14th Dist.] 2015, no pet.) (holding there was no reasonable probability

that newly discovered evidence impeaching officer's history of professionalism would have changed jury's assessment of appellant's intoxication). Viewing the evidence in the light most favorable to the trial court's ruling, we hold that the trial court did not abuse its discretion by denying Olsen's motion for new trial. *See Colyer*, 428 S.W.3d at 122. We overrule Olsen's second issue.

## Conclusion

Having overruled both of Olsen's issues on appeal, we affirm the trial court's judgment of conviction.


Sarah Beth Landau
Justice

Panel consists of Justices Lloyd, Goodman, and Landau.

Justice Goodman, dissenting.

Publish. TEX. R. APP. P. 47.2(b).