**Opinion issued January 12, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00248-CR

———————————

**BRADY CRAIG KOCH, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 5**
**Harris County, Texas**
**Trial Court Case No. 1861254**

---

## O P I N I O N

A jury convicted appellant, Brady Craig Koch, Jr., of the Class B misdemeanor offense of driving while intoxicated—second offense ("DWI").[1] The

---

[1]    *See* TEX. PENAL CODE ANN. § 49.04 (Vernon Supp. 2015).

trial court assessed his punishment at confinement for one year, suspended for two years. In his sole issue on appeal, appellant contends that the trial court erroneously denied his motion to suppress statements that he argues were made to officers while he was in custody but before he had received his *Miranda* warnings.

We affirm.

**Background**

Around 10:00 p.m. on November 7, 2012, Albert Lakey was driving down Westpark Drive in Houston when he saw a truck that had crashed into a fence and a light post. Lakey parked his own vehicle and walked over. He saw appellant "crouched over on the steering wheel" inside the still-running truck. Lakey tapped appellant on the shoulder to get his attention, and appellant began mumbling to Lakey. Lakey asked appellant whether he needed any assistance, and appellant responded with "[j]ust a bunch of gibberish, words, slurring." Appellant then got out of his truck, "staggered around" toward the back of the truck, and looked around the scene before telling Lakey, "I need to go." Appellant got back into his truck. He attempted to drive forward, and, as he did so, his truck brushed against Lakey. Lakey testified that appellant was "[j]ust a little bit lethargic, just slurring of word and staggering and really not holding his composure," and he concluded that appellant was intoxicated. Lakey did not notice any visible injuries on appellant. Other bystanders at the scene called 9-1-1.

2

After appellant tried to drive away from the scene, Lakey removed appellant from his vehicle "[s]o he won't [injure] himself or anybody else on the road." Lakey "pinned" appellant against his truck with his hands to prevent him from leaving. Lakey stayed at the scene until police officers arrived "[m]oments later," and he informed the responding officers of what he had witnessed. Lakey testified that he saw officers open the passenger door of appellant's truck and "two beer bottles fell out of the passenger's seat onto the floor."

Houston Police Department Officer M. Arroyo testified that she and her partner, Officer T. Thibodeaux, were dispatched to the accident scene at 10:05 p.m. When she arrived at 10:10 p.m., appellant was sitting on the sidewalk near his truck. Officer Arroyo testified that appellant appeared groggy and tired, and she could smell the odor of alcohol when she spoke with him. Officer Arroyo did not observe any injuries on appellant, and medical personnel checked appellant at the scene but did not render any medical assistance.

Based on the smell of alcohol and appellant's behavior, which included "incoherent, slurred speech" and "grogginess," Officer Arroyo called dispatch and requested the presence of a specialized DWI officer. While the DWI officer was on his way to the scene, Officer Arroyo handcuffed appellant and placed him in the back of her patrol car. Officer Arroyo testified that appellant was not under arrest at that point in time, but he was instead "placed in the back of the patrol car" and

3

was "detained." Appellant was not able to leave the scene while he was in the back of the patrol car. Officer Arroyo testified that she detained appellant "[t]o keep him safe, [and] keep him from the scene so we could continue to investigate the scene." Officer Arroyo continued to investigate the accident while appellant waited in the patrol car. After the DWI officer arrived, Officers Arroyo and Thibodeaux gave the information they had obtained regarding the accident to another officer who continued the investigation, and they left the scene.

Officer M. Muskiet arrived and took over the investigation of the accident from Officers Arroyo and Thibodeaux. He determined that appellant "had lost control, failed to maintain a single lane[,] and struck a fence." Officer Muskiet observed "many bottles of alcohol throughout [appellant's] vehicle." Appellant was already in the backseat of Officer Arroyo's vehicle when Officer Muskiet arrived at the scene, although Muskiet could not recall whether appellant was handcuffed. Officer Arroyo informed him that appellant was suspected of DWI, but Officer Muskiet did not speak with appellant at all during his investigation.

Officer S. Corral was a member of HPD's Traffic Enforcement Division DWI Task Force and had received specialized training in identifying intoxicated individuals. Shortly after beginning his shift at 10:00 p.m., Officer Corral received a call concerning "a crash with a person possibly intoxicated involved." When Officer Corral arrived at the scene, appellant was asleep in the back of a patrol car.

Officer Corral could smell the odor of alcohol on appellant's breath. He testified that appellant mumbled and spoke with a "slight slur," and appellant had "bloodshot, droopy eyes."

Officer Corral testified that, although appellant was in the backseat of a patrol car when he arrived at the scene, appellant was not under arrest at that time. He did not know when appellant had been placed in the patrol car or how long appellant had been in the patrol car before he arrived, but he testified that appellant was placed in the backseat because he was "being kind of combative and [was] trying to leave the scene." Officer Corral and the other officers drove appellant approximately fifty feet away to a nearby parking lot to continue the investigation without obstructing the roadway.

Officer Corral then removed appellant from the backseat of the patrol car and began his DWI investigation. He did not read appellant his *Miranda* rights prior to speaking with him. The trial court admitted a DVD recording of Officer Corral's DWI investigation of appellant. The recording reflected that Officer Corral began his investigation at 10:24 p.m. Appellant did not indicate that he was injured or disabled, and he did not request any medical assistance.

Officer Corral testified that he asked appellant how many drinks he had had that day, and appellant "rambled 2, 5, 7, 15." Appellant told Officer Corral that he had been drinking beer and that he had started drinking around noon that day.

5

Officer Corral testified that appellant exhibited six out of six clues of intoxication on the horizontal gaze nystagmus test and that appellant declined to perform any additional sobriety tests and declined to provide a breath or blood specimen. Officer Corral concluded that appellant was intoxicated, and he arrested appellant for DWI at 10:46 p.m.

Appellant moved to suppress the statements made to Officer Corral that he had had "2, 5, 7, 15" drinks earlier that day and that he had started drinking around noon, arguing that he was in custody at the time he made these statements during Corral's DWI investigation, but none of the officers had read him his *Miranda* warnings. The trial court heard testimony from Officers Arroyo and Corral outside the presence of the jury and made the following oral findings and conclusions on the record:

> The defendant was deprived of freedom, significantly, by being handcuffed in the backseat of the patrol car. He obviously couldn't leave. A reasonable prudent person would believe freedom was significantly restricted; however, the officer did tell him he was being detained rather than telling him he was being arrested or placed in custody. As in the bright-line—or formal arrest considered by *Dowthitt* [*v. State*].

> Further, the duration of the detention at the earliest would have been around 10:10, that being the time that Officers Arroyo and Thibodeaux arrived on the scene. We don't know how long it took to take the defendant and handcuff him and place him in the back of the car, so, I'll call that the earliest possible and had apparently ended by 10:24, according to my notes from the video, when the defendant appeared without handcuffs outside of the backseat. That being about a 14-minute detention in the backseat of the patrol car in handcuffs.

6

The officers have testified that there were ongoing investigations at all times during this detention and even afterward, with regard to the accident scene; talking to witnesses; trying to clear the street. And further[,] I find that moving the defendant to the parking lot rather than trying to conduct this investigation in the middle of the street was reasonable. Also, the fact that one officer walked alongside the patrol car as the defendant was moved from the street location into the parking lot reflected that this was a very short distance in time and a matter of feet, as well.

Based upon this, I will conclude that the duration of the detention was reasonable and did not convert the detention to custody, for purposes of requiring the *Miranda* rights being read to the defendant before he was questioned at this scene.

The trial court denied appellant's motion to suppress.

The jury found appellant guilty of the offense of DWI. The trial court assessed appellant's punishment at confinement for one year, suspended for two years. This appeal followed.

**Motion to Suppress**

In his sole issue, appellant contends that the trial court erroneously denied his motion to suppress oral statements made to Officer Corral. Specifically, appellant argues that he was in custody at the time he made the statements, but none of the officers had read him his *Miranda* warnings.

*A. Standard of Review*

We review the trial court's denial of a motion to suppress evidence for an abuse of discretion. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008) (citing *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). When

we review a trial court's denial of a motion to suppress, we give "almost total deference to a trial court's express or implied determination of historical facts" and review de novo the court's application of the law to the facts. *Id.*; *see also State v. Saenz*, 411 S.W.3d 488, 494 (Tex. Crim. App. 2013) (holding that appellate courts apply deferential standard to trial court's factual assessment of circumstances surrounding interrogation of defendant and apply de novo review to court's ultimate legal determination of whether defendant was in custody). We view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (quoting *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006)). The trial court is the "sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony." *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). The trial court may choose to believe or disbelieve any part or all of a witness's testimony. *Green v. State*, 934 S.W.2d 92, 98 (Tex. Crim. App. 1996). We sustain the trial court's ruling if it is reasonably supported by the record and correct on any theory of law applicable to the case. *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003).

## B. *Whether Appellant Was in Custody at Time of Statements*

A defendant's oral statement may be used against him "if it appears that the same was freely and voluntarily made without compulsion or persuasion . . . ."

TEX. CODE CRIM. PROC. ANN. art. 38.21 (Vernon 2005). Code of Criminal Procedure article 38.22 governs the admissibility of statements made as a result of "custodial interrogation" and provides that prior to making such a statement, the accused must receive warnings informing him that:

> (1)    he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;
>
> (2)    any statement he makes may be used as evidence against him in court;
>
> (3)    he has the right to have a lawyer present to advise him prior to and during any questioning;
>
> (4)    if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and
>
> (5)    he has the right to terminate the interview at any time.

*Id.* art. 38.22, § 2(a) (Vernon Supp. 2015).

"Custodial interrogation" is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966). In determining whether a defendant was "in custody" for the purpose of applying *Miranda,* an appellate court "conducts a factual review in examining the circumstances surrounding the interrogation" and "makes an ultimate legal determination whether a reasonable person would not have felt at liberty to leave." *Saenz*, 411 S.W.3d at 493 (citing *Thompson v. Keohane*, 516

9

U.S. 99, 112–13, 116 S. Ct. 457, 465 (1995)). "A person is in custody only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Id.* at 496 (citing *Stansbury v. California*, 511 U.S. 318, 322, 114 S. Ct. 1526, 1529 (1994) (per curiam)).

Although the United States Supreme Court has held that a traffic stop does not generally constitute custody for *Miranda* purposes, "subsequent events may cause a noncustodial encounter to escalate into custodial interrogation." *State v. Stevenson*, 958 S.W.2d 824, 828 (Tex. Crim. App. 1997) (citing *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S. Ct. 3138, 3150 (1984), and *Dowthitt v. State*, 931 S.W.2d 244, 254–55 (Tex. Crim. App. 1996)). The Court of Criminal Appeals has set out "at least four general situations that may constitute custody":

> (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.

*Saenz*, 411 S.W.3d at 496 (quoting *Dowthitt*, 931 S.W.2d at 255). The first three situations "require that the restriction on a suspect's freedom of movement must reach 'the degree associated with an arrest' instead of an investigative detention." *Id.* (quoting *Dowthitt*, 931 S.W.2d at 255). Although the fourth situation "requires

an officer's knowledge of probable cause to be manifested to the suspect," custody is not established unless that manifestation of probable cause "'combined with other circumstances' of the interview, such as duration or factors of 'the exercise of police control over [a suspect],' would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest." *Id.* (quoting *Dowthitt*, 931 S.W.2d at 255–57).

In making the custody determination, the primary question for the court is whether a reasonable person would perceive the detention to be a restraint on his movement "comparable to . . . formal arrest," given all the objective circumstances. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). We do not consider the subjective beliefs of the detaining officer when determining whether a suspect is in custody. *Id.* at 372–73. However, the officer's subjective belief becomes relevant if the officer manifests his belief to the detainee that he is a suspect. *Id.* at 373. We do not consider any subjective belief of the suspect that he is guilty of an offense because "the reasonable person standard presupposes an 'innocent person.'" *Id.* (quoting *Dowthitt*, 931 S.W.2d at 254).

When considering the circumstances surrounding a seizure, "allowances must be made for the fact that officers must often make quick decisions under tense, uncertain, and rapidly changing circumstances." *Hauer v. State*, 466 S.W.3d 886, 891 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Rhodes v. State*,

11

945 S.W.2d 115, 118 (Tex. Crim. App. 1997)). We thus look to the reasonableness of the officer's actions "from the perspective of a reasonable officer at the scene, rather than with the advantage of hindsight." *Id.* Officers may use such force as is reasonably necessary to effect the goal of the detention: investigation, maintenance of the status quo, or officer safety. *Id.* As a result, "handcuffing alone does not necessarily convert an investigative detention into an arrest." *Id.*; *see State v. Sheppard*, 271 S.W.3d 281, 283 (Tex. Crim. App. 2008) ("[A] person who has been handcuffed has been 'seized' and detained under the Fourth Amendment, but he has not necessarily been 'arrested.'"). "[A] temporary detention, in which the person is not free to leave, while the police officer investigates whether a crime has been committed" is constitutionally permissible. *See Sheppard*, 271 S.W.3d at 289 (citing *Terry v. Ohio*, 392 U.S. 1, 30–31, 88 S. Ct. 1868, 1885 (1968)). Although handcuffing a person who has been temporarily detained is "not ordinarily proper," it "may be resorted to in special circumstances, such as when to thwart the suspect's attempt to 'frustrate further inquiry.'" *Id.*

Appellant argues that the facts of this case go beyond the typical DWI investigative detention and instead constituted an arrest, thus triggering the requirement that the officers read him his *Miranda* warnings before questioning or obtaining a statement from him. He argues that he was initially detained by Lakey, who used physical force to "pin" him to his truck for approximately ten minutes

12

before Officer Arroyo arrived. Officer Arroyo then handcuffed him and placed him in the back of her patrol car for another fourteen minutes before Officer Corral arrived to conduct the DWI investigation. He argues that a reasonable person in that situation would believe that he was under arrest. He further argues that by handcuffing him and placing him in the patrol car, Officer Arroyo manifested her knowledge that there was probable cause to arrest him.

As the State points out, however, the trial court explicitly found that appellant's detention began at approximately 10:10 p.m. when Officers Arroyo and Thibodeaux arrived at the scene. The trial court did not consider Lakey's actions when determining if appellant was in custody, nor should it have, as there in no evidence Lakey was acting as a government agent when he held appellant at the scene before police could arrive. *See, e.g.*, *Dawson v. State*, 106 S.W.3d 388, 391–92 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (stating that "the Fourth Amendment proscribes only government action, not action by a private individual who is not acting as an agent of the government or with the knowledge and participation of a government official" and that person acts as government agent when "the government knew of, and acquiesced in, the intrusive conduct" and "the party performing the search intended to assist law enforcement efforts" as opposed to furthering his own ends); *see also Wilkerson v. State*, 173 S.W.3d 521, 527

(Tex. Crim. App. 2005) (holding that *Miranda* "generally applies only to questioning by law enforcement officers or their agents").

The trial court also found that appellant was detained in the back of the patrol car, in handcuffs, for approximately fourteen minutes, that Officer Arroyo told him that he was being detained rather than being arrested, that the officers on the scene were conducting an ongoing investigation including talking to witnesses and trying to clear the street, and that it was reasonable for the officers to move appellant to a nearby parking lot to continue the DWI investigation instead of conducting the investigation in the middle of the street. The record also contained evidence that appellant had tried to leave the scene on multiple occasions.

This case is factually analogous to the Fourteenth Court of Appeals' recent decision in *Hauer*, in which the sole officer at the scene of the accident, "[p]ursuant to department policy and for her safety and the safety of" the defendant, handcuffed the defendant and placed him in the back of her patrol car to wait for the DWI investigator. 466 S.W.3d at 891. In holding that the detention of the defendant did not rise to the level of an arrest, our sister court pointed out the officer "was alone with citizens, the fire department, vehicles blocking the road, and a person she believed to be intoxicated." *Id.* The defendant waited, handcuffed, in the back of the patrol car for approximately thirty minutes before the DWI task force officer arrived, and that officer promptly began the DWI

14

investigation upon arriving at the scene. *Id.* The Fourteenth Court of Appeals held, "The trial court properly concluded from these facts that [Officer] Owens's seizure of [the defendant] was not an arrest, but rather was a temporary detention for the purpose of conducting an investigation as soon as back-up arrived to perform [the] DWI investigation." *Id.* at 891–92.

Appellant cites the Corpus Christi Court of Appeals' decision on remand in *Saenz* for the proposition that the officers' actions in this case escalated the temporary detention to an arrest. *See* No. 13-11-00328-CR, 2014 WL 3542092 (Tex. App.—Corpus Christi July 17, 2014, pet. ref'd) (mem. op., not designated for publication). In *Saenz*, officers were dispatched to a restaurant after receiving a call that two intoxicated men were trying to start a fight with patrons. *Id.* at *1. At the scene, officers discovered Saenz sitting in his truck, which was parked across two handicapped parking spaces and was still running and had its reverse lights on. *Id.* Officers told Saenz on several occasions to turn off his vehicle, and, after Saenz finally complied and officers removed him from his truck, Saenz waited in the backseat of a patrol car for twelve to eighteen minutes before a DWI officer arrived, and an officer specifically told Saenz that he was not free to leave. *Id.* at *1–2. In upholding the trial court's determination that Saenz was in custody at the time the investigating officer handcuffed and placed him in the back of his patrol car, the Corpus Christi court noted that Saenz "was never told that he was not

15

under arrest" and that the trial court "did not explicitly find that Saenz was told that the reason he had to wait was so that officers could continue investigating." *Id.* at *5.

Here, in contrast, the trial court expressly found that Officer Arroyo told appellant when she placed him in the backseat of her patrol car that he was not under arrest, and evidence in the record supports this finding and also demonstrates that Arroyo took these actions to keep appellant safe and secure while she and Officer Thibodeaux continued to investigate the accident scene. Although Officer Arroyo suspected that appellant might be intoxicated, which led to her calling for a specialized DWI officer to be dispatched to the scene, she also testified that she had no reason to place appellant under arrest at the time she put him in her patrol car.

Although the trial court found that appellant's freedom was significantly restricted by the officers' actions, for the defendant to be considered "in custody," as opposed to merely subject to an investigative detention, "the restriction on a suspect's freedom of movement must reach 'the degree associated with an arrest' instead of an investigative detention." *Saenz*, 411 S.W.3d at 496. Here, appellant was explicitly told that he was not under arrest but was instead being detained pending further investigation. *See Hauer*, 466 S.W.3d at 891 (noting that handcuffing alone does not necessarily convert investigative detention into arrest);

16

*see also Sheppard*, 271 S.W.3d at 289 (noting that investigatory detentions, or *Terry* stops, in which suspect is not free to leave, are constitutionally permissible and that handcuffing suspect who has been temporarily detained "may be resorted to in special circumstances").

We conclude that, under the facts of this case, the trial court did not abuse its discretion when it concluded that appellant's encounter with the officers remained an investigatory detention and was not converted to an arrest upon his being placed in handcuffs in the back of a patrol car. We therefore conclude that, because appellant was not under arrest or in custody at the time Officer Corral asked him questions as part of the DWI investigation, Corral was not required to read appellant his *Miranda* warnings before continuing the investigation. *See Saenz*, 411 S.W.3d at 493 (noting that *Miranda* applies when a defendant is "in custody"). We hold that the trial court did not err in denying appellant's motion to suppress.

We overrule appellant's sole issue.

**Conclusion**

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Jennings, Keyes, and Bland.

Publish. TEX. R. APP. P. 47.2(b).