**Opinion issued June 10, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00665-CR

———————————

**THE STATE OF TEXAS, Appellant**

**V.**

**KAYLA MARIE SAWYER, Appellee**

---

**On Appeal from the County Court at Law No. 2**
**Galveston County, Texas**
**Trial Court Case No. MD-0409096**

---

## MEMORANDUM OPINION

Appellant, The State of Texas, charged appellee, Kayla Marie Sawyer, with the misdemeanor offense of driving while intoxicated ("DWI").[1] Appellee filed a pretrial motion to suppress evidence. Following a hearing, the trial court granted

---

[1]  *See* TEX. PENAL CODE § 49.04.

appellee's motion to suppress and entered findings of fact and conclusions of law. In three issues, the State contends that the trial court erred in granting the motion because (1) probable cause existed to arrest appellee for committing the offense of DWI, (2) the "collective knowledge" doctrine applied, and (3) appellee was not arrested when the law enforcement officer initially made contact with her.

We reverse and remand.

## Background

On December 23, 2022, the State charged appellee by information with the misdemeanor offense of DWI. Appellee filed a pretrial motion to suppress "all physical and testimonial evidence" resulting from her alleged illegal seizure and arrest on the grounds that she was arrested without probable cause.

### A. Motion to Suppress Hearing

The trial court held a hearing on appellee's motion to suppress. The evidence presented at the suppression hearing is set forth below.

On December 22, 2022, at 2:49 a.m., League City Police Department ("LCPD") Officer M. Nallie responded to a call about a vehicle collision. When Officer Nallie arrived at the scene, she observed that a vehicle, a Dodge Charger, had struck a utility pole, causing it to snap in two and a power line to fall onto the roadway. An off-duty Galveston County Sheriff's Office deputy, who had reported the collision, was at the scene when Officer Nallie arrived.

2

Officer Nallie and LCPD Officer J. Winston, who had also been called to the scene, approached the vehicle together. No one was inside or standing near the vehicle. Officer Winston ran the vehicle's license plate and learned that the vehicle was assigned to appellee. Officer Winston knew that appellee was a law enforcement officer with the Kemah Police Department ("KPD").

Officer Winston learned that the off-duty deputy who had reported the collision saw a Dodge Ram truck parked behind the wrecked vehicle when he first came upon the scene. The Dodge Ram was occupied by two men and a woman. The off-duty deputy identified the woman—a thin, white female with brown hair—as the driver of the wrecked vehicle. Officer Winston reported the information to Officer Nallie. He told Officer Nallie that when he tried calling appellee, she hung up on him and did not answer when he called back. Officer Winston can be seen reporting the information to Officer Nallie on the videotaped recording from Nallie's body-worn camera, which was admitted into evidence as State's Exhibit 1.

The three occupants in the Dodge Ram were KPD Sergeant K. Mays, KPD Officer J. Tankersley, and appellee. Officer Nallie's body-worn camera recorded her initial interactions with the three occupants. Officer Nallie spoke first with Sergeant Mays, who told her that the three of them had been at Scotty's Pub in League City, Texas that evening. When they left, Sergeant Mays offered to take Officer Tankersly home because he had not been drinking. Sergeant Mays stated

that they had almost reached Officer Tankersly's home when appellee called and told him, "I just wrecked my car, I hit a pole." As Officer Nallie took down Sergeant May's information, Officer Winston brought appellee out of the Dodge Ram. Appellee stood in front of the vehicle.

Officer Nallie then spoke with Officer Tankersly. He told Officer Nallie that he had been at the bar with his colleagues, he had a couple of drinks, and he got a ride home from Sergeant Mays. Officer Tankersly told Officer Nallie that he lived in Seabrook.

Officer Nallie then spoke with appellee. After appellee denied needing medical attention, Officer Nallie walked appellee over to the patrol car where she read appellee her *Miranda*[2] rights. Appellee declined to give information to Officer Nallie about what happened but agreed to participate in standard field sobriety tests. Officer Nallie testified that it was dark and "extremely cold that night," and that the roads were wet.

Officer Nallie told appellee that "because of the windy weather conditions, and things like that . . . I think it'd be best if we go to the police department and do the standard field sobriety tests in a controlled environment," to which appellee

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

replied, "sure." Officer Nallie handcuffed appellee and told her that she was just detaining her. Officer Nallie placed appellee in the back of her patrol car.[3]

Officer Nallie testified that when she first made contact with appellee, she "observed a female who didn't want to speak much; but her demeanor was of one that's intoxicated, a lot of swaying and very unbalanced, red eyes, appeared to be intoxicated, under some—introduction of alcohol or drugs," "[t]he odor of alcohol . . . [was] emitting from her," and she "just staggered when she walk[ed], very unbalanced." Officer Nallie testified that she administered the horizontal gaze nystagmus ("HGN") test to appellee in the back of her patrol car. She stated that she decided to do the test there because, due to the weather, she "didn't feel like it would be favorable to [appellee] to do it on scene." According to Officer Nallie, appellee demonstrated all six clues indicating intoxication—lack of smooth pursuit, nystagmus or an involuntary jerking movement in both eyes at maximum deviation, and onset of nystagmus before forty-five degrees in both eyes. Based on her training, knowledge, and experience, she concluded that appellee "was the operator of the [Dodge Charger] and appeared to be under the influence and wrecked her vehicle, which was on a public roadway."

---

[3] Officer Nallie turned off the audio on her body-worn camera at this point and later turned it back on after she and appellee arrived at the police station. The sound was muted on State's Exhibit 1, for approximately twenty-five minutes.

Officer Nallie transported appellee to the League City Jail. She administered the HGN test to appellee a second time, but appellee refused to participate in any additional field sobriety testing. Officer Nallie informed appellee that she was under arrest and read the DIC-24 statutory warnings to her.[4] Appellee refused to provide a specimen of her breath or blood.

During the suppression hearing, the trial court took judicial notice of the clerk's record from the administrative license revocation ("ALR") proceeding[5] involving appellee and the reporter's record of the hearing in that appeal.[6] The administrative record included, among other things, (1) the hearing transcript, (2) Officer Nallie's Incident/Investigation Report and attached Reporting Officer Narrative and DWI Case Report, and (3) the Probable Cause Affidavit. The record shows that the administrative law judge ("ALJ") ordered appellee's driver's license to be suspended, and appellee appealed the decision. Following a hearing, the trial

---

[4]     The DIC-24 form contains the statutory warning delivered to a person prior to an officer's request for a specimen of breath or blood. *See* 37 TEX. ADMIN. CODE § 17.4(1)(C).

[5]     *See* State Office of Administrative Hearings, Docket No. 405-23-08609, styled *Texas Department of Public Safety v. Kayla Marie Sawyer.*

[6]     The trial court reversed the ALR decision revoking appellee's license in Cause No. CV-0091389, *Kayla Marie Sawyer v. Texas Department of Public Safety.*

court reversed the decision and set aside the suspension of appellee's driver's license on June 16, 2024.[7]

## B. Trial Court's Ruling

On August 31, 2023, the trial court granted appellee's motion to suppress. It made the following findings of fact and conclusions of law:

1. Defendant, Kayla Sawyer's, December 20, 2022, seizure and subsequent arrest were warrantless.

2. The Defendant, Kayla Marie Sawyer, is charged by information with the offense of driving while intoxicated under Section 49.04(b) of the Penal Code, which is alleged to have occurred in Galveston County, Texas, on or about December 20, 2022.

3. On August 24 and August 25, 2023, the Court heard testimony and received evidence on the Defendant's Motion to Suppress.

4. Officer Nallie of the League City Police Department is found to be a credible witness.

5. During the hearing, this Court took judicial notice of the Court's record; including the record from the Texas Department of Public Safety Administrative License Revocation (ALR) hearing, conducted in SOAH Docket No. 405-23-08609 on February 27, 2023, and the hearing record in the subsequent appeal to this Court, conducted on May 30, 2023, in *Kayla Marie Sawyer v. Texas Department of Public* Safety, Case No. CV-0091389, wherein this Court found that the Department had failed in its burden of establishing probable cause for the arrest of the Defendant and set aside the driver's license suspension in that matter.

6. On December 20, 2022, at approximately 2:49 a.m., Officer Nallie was dispatched to a minor accident on Lawrence Road in League City, Galveston County, Texas, wherein a Dodge Charger struck a utility pole.

---

[7] The trial judge who heard the appeal of the ALR decision is the same judge who presided over the hearing on appellee's motion to suppress in this case.

7. State's Exhibit #1, as admitted, was Officer Nallie's body cam video. State's Exhibit # 1 was published to the Court.

8. Upon arrival at the scene, Officers found the Dodge Charger involved to be unoccupied. Originally, no occupants were seen in or around the vehicle by law enforcement.

9. The Officers determined that the Dodge Charger was assigned to the Defendant, Kayla Sawyer, a police officer for the City of Kemah, Texas.

10. Andre Savage, the Reporter, informed Officers that he did not witness the accident occur, but rather came upon the accident scene. Savage was unable to provide information on when the accident might have occurred.

11. Further, Savage informed the Officers that he did not observe any persons inside or standing around the Dodge Charger.

12. A Dodge Ram, containing three Kemah Police Officers, including the Defendant, arrived on the scene during the investigation.

13. Officer Nallie spoke with the driver of the Ram, Sgt. Mays; and Officer Winston spoke with the passengers, including Defendant Sawyer.

14. Prior to Officer Nallie forming her probable cause determination, Officer Winston did not relate the substance of his interview with, or any personal observations of the Defendant, to Officer Nallie.

15. During her initial contact with Defendant Sawyer, Officer Nallie escorted her away from the Dodge Ram, positioned her next to a marked patrol vehicle and immediately read the Defendant the Miranda warnings.

16. Officer Nallie then asked the Defendant to perform the Standard Field Sobriety Tests.

17. Officer Nallie placed the Defendant in handcuffs and informed her that she was being "detained."

18. Whether reasonable suspicion exists is determined by considering the facts actually known to the officer at the moment of detention.

8

19. After handcuffing and searching the Defendant, Officer Nallie placed the Defendant in the backseat of the police officer's patrol vehicle for transport to the League City Police Department.

20. Officer Nallie testified that the Defendant was not free to leave the scene or the police officer's presence.

21. Based on Officer Nallie's action, she formed her probable cause determination at the scene of the accident, during her initial contact with Defendant; and the Defendant was arrested and taken into custody at that time.

22. Four situations constitute "custody" for purposes of *Miranda* and Article 38.22: (a) the suspect is physically deprived of his freedom of action in any significant way; (b) a law enforcement officer tells the suspect he is not free to leave; (c) law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; or (d) there is probable cause to arrest the suspect and law enforcement officers do not tell the suspect he is free to leave.

23. The test for whether a person has been arrested is whether the facts demonstrate the individual's liberty of movement was actually restricted or restrained.

24. The Court concludes that, under the totality of the circumstances, the Defendant was in custody to the degree associated with a formal arrest while still on the scene.

25. Prior to Officer Nallie forming her probable cause determination, she received no evidence regarding what time the accident might have occurred.

26. Prior to Officer Nallie forming her probable cause determination, she received no evidence about when (what time) the Defendant called the Witnesses advising them she had been involved in an accident.

27. Prior to Officer Nallie forming her probable cause determination, she received no evidence regarding what time the Defendant might have been operating the vehicle.

28. Officer Nallie testified that she "did not know what condition" the Defendant was "in at the time she (the Defendant) was driving."

9

29. Prior to Officer Nallie forming her probable cause determination, she received no evidence about the time the Defendant left the pub.

30. Prior to Officer Nallie forming her probable caused determination, she received no evidence that the Defendant had been drinking while at the pub.

31. Prior to Officer Nallie forming her probable cause determination, she received no information about how long the Defendant had been at the pub.

32. Officer Nallie's body cam video reflected the weather conditions on the scene to be windy and very cold and the roadway to be wet.

33. According to State's Exhibit #1, the Defendant did not appear unusually unsteady on her feet.

34. Officer Nallie's assertion of reliance on Officer Winston's knowledge and observations in her probable cause statement is not supported by the video evidence in State's Exhibit I.

## CONCLUSIONS OF LAW

1. Given the "totality of the circumstances," the Court finds that Officer Nallie did not have sufficient evidence on the scene and at the time the Defendant was placed into custody to support a finding of probable cause for the offense of driving while intoxicated.

2. Under similar circumstances, a reasonable person would have believed that his/her freedom of movement was restrained and she was in custody, to the degree that she was not free to leave the accident scene or the police officer's presence.

3. State's Exhibit #1 demonstrates that Officer Nallie did not receive information on the substance of Officer Winston's interview with the Defendant or his observations of the Defendant prior to her arrest; therefore, Officer Nallie could not have relied upon Officer Winston's knowledge to support her probable cause finding.

4. Because the probable cause finding was formed by Officer Nallie at the scene, and without the information necessary to reasonably conclude when the Defendant was operating the vehicle or what condition the Defendant was

10

in at the time of operation, the Court finds that there was not sufficient probable cause for the arrest for the offense of driving while intoxicated.

5. Officer Nallie's arrest of the Defendant at the scene was without probable cause. Any evidence obtained subsequent to the arrest is unlawfully obtained and inadmissible.

6. The "Collective Knowledge Doctrine" did not apply.

The State timely appealed.

## Discussion

The State challenges the trial court's order granting appellee's motion to suppress evidence on three grounds. First, it contends that the trial court abused its discretion because Officer Nallie had probable cause to arrest appellee for committing the offense of DWI even if she did not know precisely when appellee had been driving. Second, it argues that the trial court erred in concluding that the "collective knowledge" doctrine applied to the case. Third, the State asserts that the trial court erred in concluding that appellee was arrested when Officer Nallie made her first contact with appellee.

## A.    Standard of Review

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion using a bifurcated standard. *State v. Espinosa*, 666 S.W.3d 659, 667 (Tex. Crim. App. 2023). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement, is arbitrary or unreasonable, or is

11

without reference to any guiding rules or principles. *State v. Thomas*, 428 S.W.3d 99, 103 (Tex. Crim. App. 2014).

At a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018). We therefore defer to a trial court's findings of fact that are supported by the record. *Espinosa*, 666 S.W.3d at 667. Likewise, we afford almost total deference to a trial court's rulings on mixed questions of law and fact if the resolution to those questions turns on the evaluation of credibility and demeanor. *State v. Hardin*, 664 S.W.3d 867, 871–72 (Tex. Crim. App. 2022). We review de novo legal questions and mixed questions that do not turn on credibility and demeanor. *Espinosa*, 666 S.W.3d at 667. The evidence and all reasonable inferences are viewed in the light most favorable to the trial court's ruling, which must be upheld if it is reasonably supported by the record and is correct under a theory of law applicable to the case. *Id*.

## B. Probable Cause

Probable cause for a warrantless arrest requires that a law enforcement officer have a reasonable belief, based on facts and circumstances within the officer's personal knowledge or of which the officer has reasonably trustworthy information, that an offense has been committed. *Torres v. State*, 182 S.W.3d 899, 901–02 (Tex. Crim. App. 2005). Probable cause is a commonsense, nontechnical concept that

deals with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Espinosa*, 666 S.W.3d 667 (quoting *Ornelas v. United States*, 517 U.S. 690, 695 (1996) (internal quotations omitted)). "Probable cause deals with probabilities; it requires more than mere suspicion, but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence." *Id.* (internal quotations omitted). "Specific and articulable facts are required." *Id.* "A mere suspicion or hunch is insufficient." *Id.*

Whether probable cause existed is an objective inquiry that requires consideration of the totality of the circumstances facing the arresting officer. *See Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). Thus, while deferring to the facts found by the trial court, we review de novo whether the evidence establishes that probable cause existed. *See Torres*, 182 S.W.3d at 902.

## C. Driving While Intoxicated

A person commits the offense of DWI if she operates a motor vehicle in a public place while intoxicated. TEX. PENAL CODE § 49.04(a). "Intoxicated" means "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body[.]" *Id.* §

13

49.01(2)(A).  Relevant here, an offense under this section is a Class B misdemeanor.  *See id.* § 49.04(b).

**D.     Probable Cause Analysis**

In its first issue, the State contends that based upon the facts that Officer Nallie knew or learned during her investigation, it was reasonable for her to believe that appellee was driving while she was intoxicated.  It argues that to have probable cause to arrest a suspect for the offense of DWI, an officer does not need to know precisely when the suspect was driving and when she became intoxicated.  Rather, probable cause exists if the officer finds the suspect in circumstances indicating that the suspect committed the offense, even though the officer did not witness the suspect driving a vehicle.  In support of its argument, the State directs us to *Dyar v. State*, 125 S.W.3d 460 (Tex. Crim. App. 2003), *Layland v. State*, 144 S.W.3d 647 (Tex. App.—Beaumont 2004, no pet.), and *Texas Department of Public Safety v. Butler*, 110 S.W.3d 673 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

**1.     *Dyar v. State***

In *Dyar*, the defendant was involved in a single-car collision around midnight on New Year's Eve.  *See* 125 S.W.3d at 461.  The defendant, who was the only occupant of the vehicle, was taken to the hospital before the police responded to the accident scene.  *See id.*  After arriving at the scene, the trooper observed that the defendant's vehicle had left the road and landed upside down.  *See id.*  The trooper

14

went to the hospital emergency room to speak with the defendant about the accident. *See id.* The defendant admitted to drinking alcohol and driving. *See id*. at 462. The trooper noticed that the defendant had slurred speech, red glassy eyes, a strong smell of alcohol, and that many of the defendant's answers were unintelligible. *See id.* Based on that information, coupled with the details of the accident, the trooper believed that he had established probable cause that an offense had been committed. *See id.* The trooper arrested the defendant for the offense of DWI, and the defendant consented to providing a blood specimen. *See id.*

After he was charged, the defendant moved to suppress the blood specimen, claiming that it was obtained pursuant to an illegal arrest. *See id.* The trial court denied the defendant's motion finding that, due to the facts and circumstances known to the trooper that night, it was reasonable to conclude that the defendant had committed a breach of the peace. *See id.* (citing TEX. CODE CRIM. PROC. art. 14.03(a)(1)). The court of appeals affirmed, as did the Texas Court of Criminal Appeals. *See id.* The Court of Criminal Appeals concluded that the trooper's observations that the defendant had slurred speech, red glassy eyes, a strong smell of alcohol at the hospital, and that many of the defendant's answers were unintelligible, coupled with the fact that the defendant admitted to drinking and driving, provided probable cause to believe that the defendant had committed the charged offense. *See id.* at 468.

15

**2.** *Layland v. State*

In *Layland*, a deputy sheriff arrived on the scene of a single-car collision. *See* 144 S.W.3d at 649. The defendant was not present at the scene, but her husband was. *See id.* The deputy told the defendant's husband that either he could bring the defendant back to the accident scene with her driver's license and insurance information or the deputy could go to their residence and get her. *See id.* When the husband brought the defendant back to the scene, the deputy noticed that she was unsteady on her feet. *See id.* The defendant admitted that she had been driving the car involved in the collision. *See id.* Because he smelled alcohol on her breath, the deputy administered standard field sobriety tests to the defendant, which she failed. *See id.* Determining that the defendant was intoxicated in public, the deputy took her into custody. *See id.*

On appeal, the defendant challenged the pretrial ruling on her motion to suppress evidence arguing that no grounds existed authorizing her warrantless arrest. *See id.* at 650. The court of appeals disagreed, noting the facts and circumstances known to the deputy at the time of the defendant's arrest, namely, (1) the defendant left the scene of the accident and then returned, (2) when the deputy arrived, he found a single-car accident where the defendant's vehicle had left the road and landed in a ditch, (3) the deputy noticed signs of intoxication when she talked to the defendant, (4) the defendant performed poorly on the field sobriety tests, and (5) the defendant

16

admitted she had been driving the vehicle involved in the collision. *See id.* The court concluded that, under the totality of the circumstances, these facts provided probable cause to believe that the defendant had committed the offense of DWI. *See id.*

### 3. *Texas Department of Public Safety v. Butler*

In *Butler*, the Texas Department of Public Safety ("DPS") appealed a county court at law judgment reversing an administrative order suspending the defendant's driver's license. *See* 110 S.W.3d at 674. There, an officer was dispatched to the scene of a car accident where he found the defendant's car, which had struck a parked vehicle, in the middle of the road. *See id.* The defendant was not at the scene but several individuals parked nearby told the officer that the defendant was in a nearby apartment. *See id.* When the officer located the defendant, she emitted a very strong odor of alcoholic beverage and her eyes were glassy and bloodshot. *See id.* When the officer asked the defendant if the car involved in the collision belonged to her, she replied in slurred speech that it did, and she admitted to the officer that she had been driving at the time of the collision. *See id.* When the officer asked the defendant to step outside with him, she had difficulty walking without stumbling. *See id.* When the officer administered the HGN test, the defendant exhibited all the signs of intoxication and failed the walk-and-turn and one-leg stand tests. *See id.*

17

Based on her refusal to provide a breath specimen at the officer's request, the defendant's driver's license was automatically suspended. *See id.* The defendant contested the suspension and the ALJ upheld the suspension. *See id.* The defendant appealed the ALJ's decision arguing that the evidence was insufficient to find that she was intoxicated at the time of the accident. *See id.* Noting that the record did not show when the collision had occurred, the defendant argued that the accident could have occurred hours before the officer arrived, and that she might not have become intoxicated until after the accident. *See id.* The trial court overturned the ALJ's suspension order, and DPS appealed. *See id.*

The court of appeals held that the trial court erred in reversing the ALJ's decision. *See id.* at 676. In reaching its conclusion, the court stated:

> Keeping in mind that probable cause deals in probabilities and that far less evidence is needed than to convict or even to show a preponderance of the evidence, we find the ALJ's decision perfectly reasonable. Although Officer Do testified he did not have any idea when the accident took place, facts exist that would lead a reasonable person to believe Butler was driving while intoxicated. Officer Do arrived at the scene of the car accident between five and eight minutes after he was dispatched. Bystanders at the scene told him that the driver of the car was in a nearby apartment. The resident of that apartment said she found Butler in the driver's seat of the Honda Civic after hearing the crash. Butler admitted she was driving at the time of the accident. Butler smelled of alcoholic beverages. Her eyes were bloodshot and her speech was slurred. She had difficulty walking. She failed three field sobriety tests. Officer Do saw no alcoholic beverages in Butler's car or in her possession, and he reported no alcoholic beverages in the apartment where she was found. This evidence would lead a reasonable person to believe the accident had occurred shortly before Officer Do arrived.

18

. . . .

The alternative conclusion—that the accident occurred several hours before Officer Do arrived and that Butler became intoxicated at some point after the accident—is completely unreasonable. It requires one to suspend reasonableness. For example, we know that the resident of the apartment where Officer Do found Butler, retrieved Butler from her car after hearing the crash and then allowed Butler to come to her apartment to use the bathroom. We would have to believe that this resident—who does not appear to have known Butler—let Butler stay in her apartment several hours while Butler became intoxicated, or, that Butler left for awhile, became intoxicated, then returned and just happened to be sitting in the apartment again when Officer Do was led to her. We would have to believe that the people on the street who directed Officer Do to the apartment witnessed the accident several hours earlier and happened to still be around to direct Officer Do. This all seems to be very unreasonable, while the ALJ's scenario is quite reasonable.

*Id.* at 676–77.

The State contends these cases support the conclusion that Officer Nallie had probable cause to arrest appellee for committing the offense of DWI, even if she did not know precisely when appellee had been driving and when she had been drinking. We agree.

During her investigation, Officer Nallie learned the following:

- Sergeant Mays, Officer Tankersley, and appellee were together at Scotty's Pub, in League City;

- After they left the bar, Sergeant Mays offered to take Officer Tankersley to his home in Seabrook, and appellee left in her own vehicle;

- Appellee crashed her vehicle into a utility pole, snapping the pole in half and downing power lines across the roadway;

19

- While Sergeant Mays was driving Officer Tankersley home to Seabrook, appellee called Sergeant Mays and told him that she had just crashed into a utility pole and asked him to come to the scene;

- Sergeant Mays, with Officer Tankersley still in the vehicle, drove to the scene of the accident and parked behind appellee's vehicle;

- Appellee was standing outside her vehicle when they arrived;

- Sergeant Mays picked appellee up from the accident scene and drove her, along with Officer Tankersley, to a nearby location;

- After he learned the identity of the driver of the crashed vehicle, Officer Winston called the appellee on the telephone several times; she hung up on the officer the first time and she did not respond to his subsequent calls;

- Appellee appeared unbalanced and staggering, with red eyes, and slow blinks;

- A strong odor of alcohol emanated from appellee;

- Appellee revealed six out of six clues of intoxication on the HGN test administered to her; and

- Appellee refused to take any further field sobriety tests.

Probable cause for a warrantless arrest requires that the officer have a reasonable belief that, based on facts and circumstances within the officer's personal knowledge, or of which the officer has reasonably trustworthy information, an offense has been committed. *Torres*, 182 S.W.3d at 901–02. "Probable cause deals with probabilities" and "is a commonsense, nontechnical concept that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Espinosa*, 666 S.W.3d at 667 (internal

20

quotations omitted). Based on the facts she knew and learned during her investigation, as evidenced through her testimony and State's Exhibit 1, Officer Nallie formed a reasonable belief that appellee was driving at the time she was intoxicated. That Officer Nallie did not know precisely when appellee had been drinking and when she was driving does not alter that conclusion. *See Dyar*, 125 S.W.3d at 468; *Layland*, 144 S.W.3d at 650; *Butler*, 110 S.W.3d at 676; *see also e.g., Gonzalez v. State*, No. 08-14-00175-CR, 2017 WL 2464690, at *6 (Tex. App.—El Paso June 7, 2017, no pet.) (not designated for publication) (concluding facts showing trooper arrived at scene of single-car accident and found truck registered to defendant that had left road and landed tail-up in ditch, defendant was not at scene but was discovered nearby, and trooper observed signs of intoxication provided probable cause for trooper to believe defendant had been drinking and driving, permitting warrantless arrest for offense of DWI, although neither trooper nor witnesses had personally observed defendant driving truck).

At the hearing on the appeal of the ALR decision and at the suppression hearing, as on appeal, appellee argued that the State could not establish that appellee was intoxicated at the time of driving because Officer Nallie did not know precisely when appellee was drinking and when she was driving. At the hearing on the appeal of the ALR decision, defense counsel stated, "for all we know, they're just hanging out, waiting for a wrecker to get there and they're drinking." The trial judge then

asked, "So we don't know that the car wasn't there for three hours?" to which defense counsel replied, "Right." At the suppression hearing, defense counsel hypothesized that after appellee's collision with the utility pole, she, Sergeant Mays, and Officer Tankersly could have gone and "and had drinks somewhere while they were waiting in the vehicle." These alternative theories are not reasonable in light of the facts discussed above and "would require one to suspend reasonableness." *Butler*, 110 S.W.3d at 676.

We note the trial court's finding that "[a]ccording to State's Exhibit #1, the Defendant did not appear unusually unsteady on her feet." However, the trial court also found Officer Nallie "to be a credible witness." Thus, even if we afford no weight to this particular finding of fact in our probable cause analysis, the remaining facts and circumstances known to Officer Nallie, when viewed together, support her reasonable belief that appellee was driving while she was intoxicated. *See State v. Cullen*, 227 S.W.3d 278, 282 (Tex. App.—San Antonio 2007, pet. ref'd) (concluding even though trial court eliminated defendant's bloodshot, glassy eyes, slurred speech, unsteadiness on his feet, and poor showing on standard field sobriety tests as relevant facts and circumstances in its probable cause analysis, remaining findings showing officer knew defendant was involved in single-vehicle accident witnessed by two officers, defendant was speeding while attempting to negotiate turn before

accident, and officer knew defendant smelled of alcohol, when viewed together, were sufficient to establish probable cause to arrest defendant for offense of DWI).

Having determined that the trial court erred in concluding that Officer Nallie did not have probable cause to arrest appellee, we hold that the trial court erred in granting appellee's motion to suppress on that basis.

We sustain the State's first issue.

## E.     Appellee's Arrest

In its third issue, the State contends that the trial court erred in concluding that appellee was arrested when Officer Nallie made her initial contact with appellee. The State asserts that while appellee was clearly arrested at some point during Officer Nallie's interaction with her, her arrest did not occur when Officer Nallie first made contact with her at the accident scene.

### 1.     Applicable Law

Case law segregates interactions between police officers and citizens into three categories: consensual encounters, investigative detentions, and arrests or their custodial equivalent. *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010). Both detentions and arrests involve a restraint on one's freedom of movement: the difference is in the degree. *Ortiz v. State*, 421 S.W.3d 887, 890 (Tex. App.— Houston [14th Dist.] 2014, pet. ref'd) (citing *State v. Sheppard*, 271 S.W.3d 281, 290–91 (Tex. Crim. App. 2008)). An arrest places a greater degree of restraint on

an individual's freedom of movement than does an investigative detention. *Id.* (citing *Sheppard*, 271 S.W.3d at 290).

In assessing the circumstances, allowances must be made for the fact that officers must often make quick decisions under tense, uncertain, and rapidly changing circumstances. *Rhodes v. State*, 945 S.W.2d 115, 118 (Tex. Crim. App. 1997). We therefore look to the reasonableness of the officer's actions, which is to be judged from the perspective of a reasonable officer at the scene, rather than with the advantage of hindsight. *Id.* In this regard, officers may use such force as is reasonably necessary to effect the goal of the detention: investigation, maintenance of the status quo, or officer safety. *Id.* at 117.

Detention and questioning by police officers during a DWI investigation, without more, is not custody. *Rodriguez v. State*, 191 S.W.3d 428, 440 (Tex. App.—Corpus Christi–Edinburg 2006, pet. ref'd) (citing *State v. Stevenson,* 958 S.W.2d 824, 828–29 (Tex. Crim. App. 1997)). Further, the fact that a defendant becomes the focus of a DWI investigation does not automatically convert an investigative detention into an arrest, *see id.* at 441, and an investigative detention does not necessarily become an arrest simply because the defendant was escorted to the patrol car and handcuffed. *Balentine v. State*, 71 S.W.3d 763, 771 (Tex. Crim. App. 2002). Moving a suspect a short distance to further an investigation is consistent with an

24

investigatory detention's purpose. *State v. Adams,* 454 S.W.3d 38, 45 (Tex. App.—San Antonio 2014, no pet.).

2.    **Analysis**

Here, the trial court found that Officer Nallie "formed her probable cause determination at the scene of the accident, *during her initial contact with [appellee]*; and [appellee] was arrested and taken into custody *at that time*."  (Emphasis added.) It found that "under the totality of the circumstances, [appellee] was in custody to the degree associated with a formal arrest while still on the scene."  The court concluded that "[u]nder similar circumstances, a reasonable person would have believed that []her freedom of movement was restrained and she was in custody, to the degree that she was not free to leave the accident scene or the police officer's presence."

Based on the facts of this case, appellee was not arrested when Officer Nallie made initial contact with her.  When Officer Nallie first encountered appellee, appellee was standing in front of Sergeant Mays's vehicle.  Officer Nallie walked appellee to the patrol car where she informed her of her *Miranda* rights.  Due to the weather conditions, Officer Nallie decided to relocate appellee to administer the field sobriety tests.  *See Adams*, 454 S.W.3d at 45 (concluding trooper's decision to transport defendant to fire station because accident scene was not safe location to conduct field sobriety tests, without more, did not convert detention into arrest).

25

Officer Nallie handcuffed appellee and told her that she was just detaining her. Appellee was then placed in the back of Officer Nallie's patrol car. Officer Nallie testified that it was customary to place a person suspected of a crime in handcuffs during the course of an investigation. *See Balentine*, 71 S.W.3d at 771 (noting investigative detention does not necessarily become arrest simply because defendant was escorted to patrol car and handcuffed); *Koch v. State*, 484 S.W.3d 482, 489 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("[H]andcuffing alone does not necessarily convert an investigative detention into an arrest."). Officer Nallie administered the HGN test to appellee while she was in the back of the patrol car. She stated that she decided to do the test there because, due to the weather, she "didn't feel like it would be favorable to [appellee] to do it on scene." Officer Nallie testified that appellee demonstrated six out of six clues of intoxication.

Officer Nallie then transported appellee to the League City Jail several miles away. *See Adams*, 454 S.W.3d at 45 (stating officer's act of moving suspect short distance to further investigation is consistent with purpose of investigatory detention). Once there, Officer Nallie informed appellee that she was still just detained and removed the handcuffs. *See Koch*, 484 S.W.3d at 491 (considering fact that defendant was explicitly told he was not under arrest but instead only detained pending further investigation as factor in concluding investigatory detention did not evolve into arrest). Officer Nallie administered the HGN test to appellee a second

26

time, but appellee refused to participate in any further field sobriety testing. Officer Nallie informed appellee that she was under arrest and read the DIC-24 statutory warnings to her at that time.

Given the totality of the circumstances, we conclude that the trial court erred when it concluded that appellee was arrested when Officer Nallie made initial contact with her. We hold that the trial court erred in granting appellee's motion to suppress on that basis.

We sustain the State's third issue.[8]

## Conclusion

We reverse the trial court's order granting appellee's pretrial motion to suppress and remand the cause to the trial court for further proceedings consistent with this opinion.

Kristin Guiney
Justice

Panel consists of Chief Justice Adams and Justices Gunn and Guiney.

Do not publish. TEX. R. APP. P. 47.2(b).

---

[8] In light of our conclusion that the trial court erred in granting appellee's motion to suppress for the reasons discussed above, we do not reach the State's second issue—that the trial court erred in granting appellee's motion to suppress because the "collective knowledge" doctrine applied to the case. *See* TEX. R. APP. P. 47.1.